[Civ. No. 1119.   Third Appellate District.—August 28, 1913.]

# W. G. COHEN, Appellant, v. HENRY T. ANDERSON, Respondent.

ADVERSE POSSESSION—OCCUPANCY OF LAND—SUFFICIENCY TO ESTABLISH PRESCRIPTIVE TITLE.—Evidence that a claimant of land visited it a short time, posted notices thereon claiming the same and warning trespassers, asserted ownership on one or two occasions when he found sheep and cattle running on the premises, allowed a man one winter to camp on the place to hunt and trap, paid the taxes, but made no improvements, is not sufficient to establish title by adverse possession.

ID.—POSSESSION OF PART OF TRACT COMPOSED OF SEVERAL LOTS.—Where a tract of one hundred and sixty acres is divided into five lots, the inclosure of ten acres, the evidence not showing on which lot, will not sustain a judgment for title to the entire tract by adverse possession.

ID.—ESSENTIALS OF ADVERSE POSSESSION—HOSTILE CLAIM—FINDINGS.— The adverse and hostile character of the possession is of the very essence of a prescriptive title. Therefore a finding that the defendant and his predecessors "have at all times held open, notorious, peaceable and exclusive possession of said lands under claim of right and title thereto," and have paid the taxes during all such time, will not support a judgment for title by adverse possession.

ID.—SUIT TO QUIET TITLE—REIMBURSEMENT FOR TAXES.—Where the defendant, in a suit to quiet title, raises the defense of adverse possession, but does not claim reimbursement from the plaintiff for taxes paid, and the complaint does not disclose such right to reimbursement, the maxim, "He who seeks equity must do equity," cannot be invoked so as to require the plaintiff before having judgment, to reimburse the defendant.

ID.—APPEAL—JUDGMENT ON FINDINGS—WHEN NOT ALLOWABLE.—Where, in a suit to quiet title, judgment is awarded the defendant on his plea of title by adverse possession, but on appeal it appears that the judgment is not supported by the findings, and there is no finding in favor of the plaintiff, the appellate court cannot order judgment for the plaintiff on the findings, but will reverse the judgment and remand the cause for a new trial.

APPEAL from a judgment of the Superior Court of Siskiyou County.   James F. Lodge, Judge.

The facts are stated in the opinion of the court.

Milton Shepardson, for Appellant.

Taylor & Tebbe, for Respondent.

CHIPMAN, P. J.—This is the ordinary action to quiet title to land. In his amended answer, filed on the day of the trial, defendant denied that plaintiff is the owner in fee of the property claimed. Further answering, defendant alleges:

"That defendant and his predecessors in interest were for a period of more than five consecutive years prior to the commencement of this action in the open, notorious, exclusive, continuous, uninterrupted, peaceable and adverse possession of said property and the whole thereof, under claim of right and title thereto, exclusive of any other right; and that plaintiff and his predecessors have during all of said years paid all the state, county and municipal taxes levied and assessed against said property."

By way of cross-complaint defendant avers "that he is now and for a period of more than five years prior to the date of the filing of the complaint herein, has been the owner of, and in the possession of all those certain lots," describing the real property in question; that plaintiff claims some right to or interest in said property, without right, and prays the decree of the court that plaintiff take nothing by his action and that defendant be adjudged the owner of said property.

Defendant had findings in his favor and judgment passed quieting his title to said land. Plaintiff "moved the court to enter another and different judgment than the one entered in said cause on May 10th, 1912 . . . and that the said court enter a judgment as prayed for in favor of the plaintiff adjudging the plaintiff to be the owner in fee of said premises described in the cross-complaint and findings therein." The motion set forth quite fully the grounds thereof but it was denied by the court. Thereupon plaintiff served and filed his notice of appeal from the judgment and brings the case here on the judgment-roll and reporter's transcript of the proceedings in the case.

The subject of the action is the following described land: Lots 2, 3, and 4, sec. 10, and lots 6 and 9, sec. 11, T. 43 N., R. 3 E., M. D. M., situated in Siskiyou County containing 161.50 acres.

Plaintiff's title rests upon a patent issued to him by the United States, dated June 30, 1887. It appeared from plaintiff's testimony that this land borders in part on a lake and that he had been in the habit of going there to fish and hunt as early as in 1877 and continued his visits for short periods up to 1904. He made no improvements on the land other than the erection of what he termed a "shack to live in. . . . a temporary proposition." He described the country as "wild" and "too cold to stay there long." It appeared by the evidence that the land is in the mountains of Siskiyou County at an elevation of seven thousand feet.

Defendant introduced certain proceedings relating to an assessment of the land and a sale to the state for nonpayment of the tax levied in 1888 and a subsequent sale by the state by deed dated February 4, 1905, to Charles Crawford and William J. Bray. This was followed by deed from Crawford to defendant, dated November 2, 1907, and a deed from Bray to defendant, dated November 26, 1907.

It is conceded that the proceedings in the matter of the tax-title were void for fatal irregularities and failures to comply with the law and that no title passed to either Crawford or Bray and hence they conveyed no title. These proceedings and deeds, however, were introduced and are relied upon by defendant as color of title and supporting as such his prescriptive title on which alone rests his claim. The provisions of the Code of Civil Procedure relating to what constitutes adverse possession under a written instrument, are found in sections 322 and 323. Section 322 provides: "When it appears that the occupant, or those under whom he claims, entered into the possession of the property under claim of title, exclusive. of other right, founding such claim upon a written instrument, as being a conveyance of the property in question, . . . and that there has been a continued occupation and possession of the property, included in such instrument, . . . or some part of the property, under such claim, for five years, the property so included is deemed to have been held adversely, except that when it consists of a tract divided into lots, the possession of one lot is not deemed a possession of any other lot of the same tract." Section 323 provides. "For the purpose of constituting an adverse possession by any person claiming a title founded upon a written instrument

. . . land is deemed to have been possessed and occupied in the following cases: 1. Where it has been usually cultivated or improved; 2. Where it has been protected by a substantial inclosure; 3. Where, although not inclosed, it has been used for the supply of fuel, or of fencing timber for the purpose of husbandry, or for pasturage, or for the ordinary use of the occupant; 4. Where a known farm or single lot has been partly improved, the portion of such farm or lot that may have been left not cleared, or not inclosed according to the usual course and custom of the adjoining country, shall be deemed to have been occupied for the same length of time as the part improved and cultivated.''

There is a provision found in section 325, applicable to all the sections relating to the subject of prescriptive title—''that in no case shall adverse possession be considered established . . . unless it shall be shown that the land has been occupied and claimed for the period of five years continuously, and the party or persons . . . have paid all the taxes . . . which have been levied and assessed upon such land.''

Appellant contends: 1. That title by adverse possession is not sufficiently pleaded in the amended answer; 2, That the findings are insufficient to show a title by adverse possession; 3. That the findings are insufficient to support the judgment; 4. That the findings are wholly unsupported by the evidence.

The action was commenced May 11, 1911. Crawford and Bray's color of title dates from February, 1905, and defendant's from November, 1907. Bray did not testify. Crawford testified that he went to the land on the twenty-fourth day of June, 1905; that he went there to see if he ''could run the lines out and establish corners, to see where my land was that I had bought.'' He testified: ''I put up two notices that we were running the lines out,'' warning against trespassing; that he was there ''three days that spring but in the fall later on quite a while—a week or ten days hunting and prospecting.'' He went to the property again in 1906 ''in the latter part of July or first of August.'' He found a man by the name of Brown running sheep on the land and told him he was intruding on his rights and that he must keep his sheep off. At another time he drove a band of forty or fifty cattle off the land. He was asked if he built a fence and replied that he did not; that he ''had too much work to

do at home. Q. And all you did in the way of possession would be the same as I would do now, if allowed to go in there eight or ten days and hunt and simply look in and stay till I got enough deer to satisfy me and walk out? A. That would be about all there was to it I guess." It does not appear that he or Bray was at the land in 1907. He testified, as to the character of the land, that "it is not farming land; it isn't timber land either. I would call it grazing land, but not much fit for grazing land either—more for a summer resort"; that "the season for grazing would be very short . . . at the outside three months." Crawford and Bray paid the taxes levied and assessed while they claimed the land. The foregoing shows substantially the extent of the occupation of the land by defendant's predecessors.

Defendant testified as to his occupation of the land: "In the spring of 1908 as quick as I could get in there, it was some time in the latter part of June or first of July, I went into this place and stuck up notices all around, as nearly as I could describe the piece of land without a surveyor. Close to the lake I put up notices forbidding trespassing on the place of people coming in there grazing it off with sheep. Q. What is the character of the land? A. There is a little grass on it, some little timber, small timber. Q. Would you call it grazing land? A. Well, it is grazing land for a little while in the summer. Q. What else is it? A. It is just a kind of a summer resort. . . . I stayed there some two or three day at that time—then I went back home. Some time about July 4th I moved out there with my family. Q. What did you use it for? A. I used it for, just for a summer resort, for camping and hunting. . . . We stayed there six weeks when I moved out." In 1909 he went to the land on horseback the first of July and later took his family there as he had the year before. He testified: "It is cold—it is only just a little while, somewheres, probably three months, would be as long as one could stay there comfortably. Q. That is as much as it can be occupied as a summer resort? A. Yes, sir; three months would be the limit for any comfort there. Q. And is that as much as it can be occupied for grazing? A. Yes, sir; grass no grow after that length of time." He testified that in 1910 he "went up twice that spring again, stayed a few days, fixed up the camp" and took his family

in later. "Q. How in 1911? A. That is the last summer?
Q. Were you up there last summer? A. I was up twice last
summer." The facts were brought out more fully in the
cross-examination from which it appeared that defendant
fenced in a piece of land, near the lake of about ten acres, a
fence consisting of two wires fastened to trees, the wires in
the spaces between the trees being supported by stakes; that
this inclosure, sometimes referred to as a corral, was used by
defendant to keep his horses and the horses of such visitors
as came to the lake as desired its use. Other horses (of
campers) were hobbled and ran at large on the outside.
"Q. While you were there, everybody who kept stock came
and crossed the land and recrossed it, run their stock across
and the adjoining land? A. Yes, sir. Q. And there was no
molestation by you of those people or their stock? A. No,
sir. Q. It was practically an uninclosed country? A. Yes,
sir." Speaking of visitors to the land, he was asked: "Q.
When they didn't put their horses in your inclosure, they
were running across the land? A. Yes, sir. Q. And they
asked permission of no one? A. Sure not. Q. They did
simply as they pleased, as any one would in an open un-
inclosed country. A. Yes, sir." He testified that in talking
with campers he told them he owned some land there but did
not know exactly the boundaries. "Q. You didn't take this
up as a place of residence at all, you had your home in
Klamath County, didn't you? A. Yes, sir. That was just
a summer resort. Q. You took it up as a summer resort?
A. Yes, sir." He testified that his home, in Klamath, Oregon,
was about forty miles distant from this land; when he
visited the land in 1910 with his family he remained two
or three weeks, "probably longer," and did not go back again.
"Q. So the most you were in there each year was between
two and three weeks? . A. I suppose it was, though it might
have been more. Q. Were there other people in there all the
time these different seasons? A. Part of the time there was;
sometimes nobody but my family were camped there." Of the
fence erected by him he testified that it was possible to build
a substantial fence there so as to keep cattle out and protect
the land, "with logs and such stuff as that. Q. The fence
you built was not such a fence? A. I didn't build it for
the purpose of keeping cattle out. I built it to hold my stock

in them. The time I was there. Q. It was just a mere make-shift of a fence for your convenience while you were there camping? A. Yes, sir. Q. And that is the only purpose you had in building it? A. Sure. Q. It was not because you intended to take possession of the land, 160 acres there surrounding that lake, was it? A. I claim when I got the deed I had possession; I lived there and claimed it all. Q. Just by reason of the fact you had your deed, was that it, and by reason of the fact you paid your taxes? A. Sure. . . . Q. As a matter of fact you never asserted your claim except under your deed, and by the payment of your taxes? A. Why I had nothing else to claim it under. Q. And you never rented the place to anybody? A. No, sir; sure not " He testified that he made no improvements except the fence above mentioned and built no cabin and that the snow broke down the wires so that they had to be put up each year. Other witnesses testified that campers came in there to hunt and fish, some of whom camped on this land and others on government land near by; that domestic animals, cattle, horses, and sheep, grazed on the land in question and other adjoining land, outside the inclosure made by defendant.

On this evidence, and we have given enough of it to fairly disclose the extent and nature of the use made of the land by defendant, the court made the following among other findings:

"9. And the court finds that defendant has at all times assumed and held the possession and control of said property.

"10. That there was no one who ever interfered with the possession of said property or any part thereof by defendant, nor any one who claimed any right, title or interest in the property at any time.

"11. That Crawford and Bray during their possession and defendant during his possession, each and all have at all times held open, notorious, peaceable and exclusive possession of said lands under claim of right and title thereto, and have, during all of said time, paid the taxes, state, county and municipal, which were levied and assessed thereon.

"12. That said property is not agricultural land, nor is it grazing land. That it has an elevation of 7000 feet. That it is situated a great distance away from any farming or agricultural lands—in the mountains and is useful or available

only for use as a camping ground or summer resort. That said property was at all times held, claimed and occupied and cared for by Crawford, Bray, and defendant, Anderson, in the same manner and used for the same purposes as such property usually is used."

"13. The court finds that this character of property is not usually inclosed by fence, of any kind, that it is customary and usual only to post said property in the usual manner as against trespassers."

We are unable to find evidence in the record sufficient to support the foregoing findings without which latter the judgment would have no support. Neither Crawford nor Bray, defendant's predecessors, did more than to visit the land for a short time, post notices thereon claiming the same, and warning against trespassers; they asserted their ownership on one or two occasions when they found sheep and cattle running on the land, and one winter they allowed a man to camp on the place to hunt and trap. But there is no evidence that they made any improvements on the land, or did the acts required to constitute adverse possession other than to pay the taxes levied and assessed thereon. We do not see how their possession can be availed of by defendant as hostile or adverse to plaintiff and the whole world in making up the period of five years required by the statute.

Defendant took his deed in November, 1907, but did not attempt to take possession under it until the latter part of June or the first of July, 1908. His possession, such as it was, begins to run from that date, and ceased on May 11, 1911, when the action was commenced. Unless defendant can avail himself of Crawford and Bray's possession as adverse in the legal sense of that term, his possession, if, under the evidence, it can be held to have been adverse, would fall far short of the required five years.

The finding "that the said property is not agricultural land, nor is it grazing land," is supported by the evidence only to the extent that it is not agricultural land. The evidence is that sheep and cattle were grazed upon it, and their owners were warned to keep their stock off the land. The finding that the land "is usful or available only for use as a camping ground or summer resort" may be true as to the land near the lake around which the campers pitched their tents and defendant

22 Cal. App.—41

made his ten-acre inclosure, but the evidence is that outside this inclosure stock were running at large, and pastured, and hence there must have been feed upon it. It may be that had defendant established at the lake a "summer resort" for the public, such as is implied by that term, including the improvements necessary to a summer resort, part of the tract might be utilized in connection with it. We doubt, however, whether the statute contemplates that sort of adverse possession. The question is novel and need not be decided. Defendant did no more than to make a portion of one lot a mere temporary place for the summer outing of his family for a few weeks, and did absolutely nothing toward making a home or a "summer resort" of it, except to inclose ten acres in a temporary way. There was no evidence to justify the finding that "said property was at all times held, claimed, and occupied, and cared for by Crawford, Bray and defendant, Anderson, in the same manner and used for the same purposes as such property usually is used." There was no evidence of any custom or usage relating to occupancy of land similarly situated, if it were allowable or possible to show a custom or usage in such cases. The finding is no doubt intended to meet subdivision 1 of section 323 of the Code of Civil Procedure, that is, that the land "has been usually cultivated or improved"; or, possibly, to meet the requirement of subdivision 4 of that section, that is, where a single lot has been partly improved the portion of such lot not inclosed according to the custom of the adjoining country, "shall be deemed to have been occupied for the same length of time as the part improved and cultivated." But we cannot find evidence warranting our holding that these provisions have been met.

And this leads to another section. Section 322 provides that "when it (the land) consists of a tract divided into lots, the possession of one lot is not deemed a possession of any other lot of the same tract." Here are five different lots, some fractional, comprising in all 161.50 acres. The evidence is that but ten acres were inclosed, and the evidence does not show on which lot is this inclosure. How can the judgment stand giving defendant title to all these lots by adverse possession? We are unable to discover how it can be done.

We think, too, that the finding of adverse possession, marked 11, *supra*, is insufficient to support the judgment. It is that

defendant and his predecessors "have at all times held open, notorious, peaceable and exclusive possession of said lands under claim of right of title thereto," and have paid the taxes during all said time. This is not a finding that they held possession adversely, or in hostility to plaintiff, or to the world. The finding might be true had they entered under lease from plaintiff. A possession may be open, notorious, peaceable, and exclusive when claimed by a tenant. He may also be holding possession under claim of right of title, but unless this possession is by the court found to have been adverse to the owner or the whole world it is not such possession as can ripen into a prescriptive title. The adverse and hostile character of the possession is of the very essence of prescriptive title. The law on this subject is too well settled to call for extended citation of authorities. (*Churchill* v. *Louie,* 135 Cal. 608, 610, 611, [67 Pac. 1052], and cases there cited.) The elements constituting adverse possession are well stated in notes to *Jasperson* v. *Scharnikow,* 15 L. R. A. (N. S.) 1178.

Appellant asks that on the findings the judgment be reversed and the lower court directed to enter judgment for plaintiff. The record shows that the defendant and his predecessors have paid the taxes levied and assessed on the land since their occupation, and also that the purchasers at the delinquent tax-sale paid all such taxes, costs, and charges up to that time incurred. The maxim—"He who seeks equity must do equity"—forbids our complying with the plaintiff's request. (*Holland* v. *Hotchkiss,* 162 Cal. 366, [123 Pac. 258]; *Campbell* v. *Canty,* 162 Cal. 382, [123 Pac. 266].) In the first of these cases, upon a careful examination of the question, Mr. Justice Shaw thus stated the rule: "Where the owner comes into equity asking equitable relief to remove or cancel a tax-deed or sale as a cloud upon his title, or to obtain a judgment which, in effect, will invalidate the sale or deed, the court should refuse any relief except upon the condition that he first repay to the tax purchaser, or his grantee or assigns, the taxes, penalties, interest, and costs justly chargeable upon the land, and which the purchaser has paid at the sale, or afterward upon the faith of it, with legal interest from the time of such payment, less rents received, if any, if the purchaser has been in possession." The opinion points out some further things which the plaintiff must do, conditional to

judgment, which may or may not have application to the present case. In the condition of the record we do not feel warranted in granting appellant's request even conditionally that the judgment be so framed as to require plaintiff to do equity, as in the case cited, it is shown, he must do before he can recover. As the judgment must be reversed and the cause remanded for a new trial, plaintiff should have leave to amend his complaint by showing payment or tender of payment of the charges enumerated in *Holland* v. *Hotchkiss,* 162 Cal. 366, [123 Pac. 258].

The judgment is reversed.

Hart, J., and Burnett, J., concurred.

A petition for a modification of the judgment in this cause having been filed, the following opinion was rendered thereon by the district court of appeal on September 27, 1913:

CHIPMAN, P. J.—Plaintiff asks, by petition, for a modification of the opinion filed herein "by striking therefrom the last paragraph thereof, and inserting in lieu thereof an order directing the trial court to enter judgment on the findings in favor of appellant, pursuant to appellant's motion." Attention is called to the pleadings from which it appears that plaintiff in his complaint simply alleged ownership in himself and the assertion of an adverse claim, without right by defendant, to the land in controversy. It is hence suggested that the complaint did not show an equitable right in defendant, or a duty from plaintiff to defendant, upon which the maxim—He who seeks equity must do equity—can be invoked. *Buck* v. *Canty,* 162 Cal. 226, 237, 238, [121 Pac. 924, 929], is cited, wherein the court said: "The equity of the defendant not being apparent on the face of the complaint, the only other way by which it could be presented would be by setting it up in the answer." But the answer in the case here did not allege a purchase by defendant or his predecessor at a tax-sale, and only referred to the payment of taxes for five years as an element in his title by adverse possession. As in the case cited, it is apparent, from the answer as well as from the proceedings at the trial, that there is no claim made by defendant that plaintiff should reimburse defendant for any taxes

and charges paid by him or that he relied upon the maxim of equity referred to. In this condition of the record we think the matter referred to in the opinion and the order heretofore made should be modified. We do not, however, see how we can order judgment for plaintiff on the findings. Conceding the finding numbered eleven to be insufficient and hence there is no finding of ownership in defendant, there is no finding in favor of plaintiff, and this court cannot make findings. The lower court found that he had a patent to the land from the United States dated June 30, 1887, but this is not a finding that when the action was commenced or at its trial he was such owner. The most we can do is to reverse the judgment and remand the cause for a new trial. It is further ordered that the last paragraph of the opinion filed on August 28, 1913, dealing with the question of taxes and the duty of plaintiff in relation thereto, be stricken out.

The judgment is reversed.

Burnett, J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 27, 1913.