[Civ. No. 1245.   Third Appellate District.—February 26, 1915.]

## CATHERINE HART, Respondent, v. ALL PERSONS, etc., Defendants; SPRING VALLEY WATER COMPANY (a Corporation), Appellant.

ACTION TO ESTABLISH TITLE—McENERNEY ACT—INSUFFICIENCY OF EVI-
DENCE TO SUPPORT CLAIM OF PRESCRIPTIVE TITLE—RIGHT TO ATTACK
SUFFICIENCY OF EVIDENCE AS TO ADVERSE PARTY'S TITLE.—Where in
an action to establish title under the so-called McEnerney Act it is
legally impossible for the court to find in favor of the defendant's
contention that it has title by prescription to the land in question,
by reason of lack of evidence of certain essential elements of ad-
verse possession, such fact does not deprive the defendant of the
legal right to insist that the evidence is insufficient to support the
judgment and findings in favor of the plaintiff, for in such action
the plaintiff cannot rely altogether upon the defendant's failure to
prove his title, but must show title in himself.

ID. — ADVERSE POSSESSION — POSSESSION AND OCCUPATION — RIGHTS
AGAINST TRESPASSER.—The actual possession and occupancy of land
under claim of ownership for any period is sufficient to enable the
party in possession to maintain an action to quiet title as against a
trespasser, or one who establishes no title in himself.

ID.—ACTUAL POSSESSION AND OCCUPANCY—INSUFFICIENCY OF EVIDENCE.
Actual possession and occupancy of land is not shown by evidence
that the plaintiff's predecessor in interest surveyed the land, staked
the boundaries and afterwards pointed it out as his land and as
such offered it for sale; nor is such possession and occupany shown
by evidence that the plaintiff and family visited the land once or
twice a week for the purposes of pleasure, in the absence of any
evidence that such was the highest or best or only use to which the
land might be put or to which it was adapted.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order deny-ing a new trial.   Thomas F. Graham, Judge.

The facts are stated in the opinion of the court.

Page, McCutchen, Knight & Olney, and McCutchen, Olney & Willard, for Appellant.

Daniel O'Connell, for Respondent.

CHIPMAN, P. J.—On August 25, 1911, plaintiff brought suit under the McEnerney Act to establish her title to two parcels of land situated in the city and county of San Fran-

cisco.  In its amended answer appellant set up title to a portion of one of these parcels, but the court found in favor of plaintiff as to all land claimed by her.  The appeal is from the whole of the judgment and the order denying the motion for a new trial, although no error is claimed except as to a portion of one lot of the land.  The situation is explained by the following diagram, the land in dispute being the shaded portion:

B C D E—Land described in complaint.
F I—Line of Spring Valley Water Company's fence.
B C I F—Land admittedly owned by Catherine Hart.
F I D E—Land in dispute.

It is stated by appellant that "neither party claimed title
to the disputed territory by direct chain of title from a para-
mount source. Plaintiff's claim reduces itself to an assertion
of title by prescription under a conveyance in 1878 from a
party who did not deraign title from any paramount source
of title. Appellant claims by prescription under three sepa-
rate conveyances, none of which are from grantors shown to
be connected with the title of plaintiff's grantor." During
the trial it was also stated by appellant that its only claim
"is that of adverse possession." The conveyances upon which
plaintiff relies, it may be stated, are a deed from A. W. Von
Schmidt to Henry Hart (plaintiff's husband), dated January
21, 1878; deed from Henry Hart to Henry E. Hart (plain-
tiff's son), dated some time between January 21, 1878, and
December 15, 1890; deed from Henry E. Hart to Catherine
Hart, plaintiff herein, dated December 15, 1890.

At the outset it may be well to state that it would have been
legally impossible for the court to have found in favor of
defendant's contention that it had a title by prescription to
said disputed tract. Evidence of certain essential elements of
*adverse* possession on the part of defendant was utterly lack-
ing. Indeed, it is at least doubtful whether there was suffi-
cient evidence of *any* of these elements. The only showing
made in favor of defendant's claim was in reference to a cer-
tain fence that was built years ago upon or near the southern
line of said shaded portion of the diagram. There was no
evidence that defendant had exclusive possession of the dis-
puted strip or that it paid any of the taxes that were levied
upon it. There was no showing that said tract was entirely
inclosed or that any portion of it was used or actually occu-
pied by defendant.

As to the Spring Valley Water Company's fence, no wit-
ness was called who had personal knowledge of when or how
or under what authority it was located and constructed, and
the two who testified declared nothing of their own knowledge
except simply facts from which only the inference could be
drawn that the fence actually existed along said line from a
very early period. The most important witness for appellant
was Mr. Herman Schussler, who was assistant engineer of the
company from 1864 to 1866, and who has been chief engineer
and consulting engineer ever since. He testified that he vis-
ited Lobos Creek with Mr. Elliott, the city engineer, in the

summer of 1866 and that he then saw a fence, "for the purpose of keeping cattle and impurities out of the creek there was a fence on both sides of the creek; if I remember right there was one on both sides—one on the south side, on the upper edge of the bank, and one on the north side of the flat close to within 50 or 75 feet of the creek so that the cattle and horses of the government officers would not get at the water. . . . Anywhere between 1866 and 1870 I saw that the fence was up on the upper edge of the slope—quite a straight line—there was an old board fence there." He further testified that he did not put up the fence nor order it put up; that "it was there before I came there"; and the only thing he knew about the fence was that he "had seen it there a number of times."

The only other witness as to this matter for appellant was George P. Dillman, a surveyor and civil engineer, but he knew nothing about the fence and did not see it until 1908, and his testimony is significant only as to the location of the old fence. He declared that "I was just told to make a survey of the fence as it existed from 15th Avenue to the ocean; I didn't have any other instruction. I just picked up the fence as it went along"; that he didn't "know anything about the title."

The foregoing is not decisive of the case, however, as notwithstanding no finding nor judgment as prayed for by defendant could be sustained, appellant has the legal right to insist that the evidence was insufficient to support the findings and judgment in favor of plaintiff.

It is, of course, true that in an action to quiet title plaintiff cannot rely altogether upon defendant's failure to prove his title. The rule is as stated in *Williams* v. *City of San Pedro etc. Co.,* 153 Cal. 49, [94 Pac. 236] : "It is elementary that a plaintiff in an action to quiet title cannot prevail unless he shows title in himself. If he has no title he cannot complain that someone else, also without title, asserts an interest in the land," citing cases.

Therefore we must consider the attack made by appellant upon the judgment in favor of respondent and especially the contention that the evidence is insufficient to support two certain findings of the court "upon the sufficiency of the evidence to support which," appellant claims, "depends the correctness of the judgment which the lower court entered."

These findings are: "A. W. Von Schmidt was on January 21, 1878, and long prior thereto, in open, actual, notorious, exclusive, and peaceable possession of the real estate described in paragraph II of said complaint," and "Ever since said January 21, 1878, the said Henry Hart, Henry E. Hart, and Catherine Hart, the plaintiff, have been in the actual, open, notorious, exclusive, and peaceable possession of said above described estate openly claiming to own said described real estate against all other persons and against all the world and during the period between said January 21, 1878, and December 15, 1890, the said Henry Hart and Henry E. Hart so claimed the said real estate in fee and since said December 15, 1890, said Catherine Hart, the plaintiff, has so claimed title to said described real estate in fee against all persons and against all the world."

Before considering, however, the sufficiency of the evidence to support these findings we may refer to a principle that is not disputed to the effect that "the actual possession and occupation of land under claim of ownership for any period is sufficient to enable the party in possession to maintain an action to quiet title as against a trespasser or one who establishes no title in himself." (*McGovern* v. *Mowry,* 91 Cal. 383, [27 Pac. 746] ; *Morris* v. *Clarken,* 156 Cal. 16, [103 Pac. 180].)

The foregoing statement, which we adopt, is taken from portions of the opinion heretofore filed in the case. Upon further and more careful examination of the evidence and the principles of law applicable thereto we find ourselves compelled to reach a different conclusion from that first arrived at.

Neither party deraigned title from the paramount source. Both parties, however, claim to have "entered into possession of the property under claim of title, exclusive of other right, founding such claim upon a written instrument, as being a conveyance of the property in question" (Code Civ. Proc., sec. 322) ; and both urge that their claim has ripened into title by adverse possession as defined in section 323 of the Code of Civil Procedure, which reads: "For the purpose of constituting an adverse possession by any person claiming a title founded upon a written instrument . . . land is deemed to have been possessed and occupied in the following cases: 1. Where it has been usually cultivated or improved; 2. Where it has been

protected by a substantial inclosure; 3. Where, although not inclosed, it has been used for the supply of fuel, or of fencing timber for the purposes of husbandry, or for pasturage, or for the ordinary use of the occupant; 4. Where a known farm or single lot has been partly improved, the portion of such farm or lot that may have been left not cleared, or not inclosed according to the usual course and custom of the adjoining country, shall be deemed to have been occupied for the same length of time as the part improved and cultivated." Section 325 of the Code of Civil Procedure provides: "that in no case shall adverse possession be considered established under the provision of any section or sections of this code, unless it shall be shown that the land has been occupied and claimed for the period of five years continuously," etc.

Defendant's claim of title by prescription has already been disposed of. It remains to determine whether plaintiff has shown sufficient facts to support the findings in her favor.

It was admitted that plaintiff has whatever title was in Von Schmidt, and if the latter, when he conveyed to Henry Hart, had such possession as would have sustained an action against a trespasser the concession of defendant in effect clothes plaintiff with such title and would be sufficient to support her action as against defendant. Von Schmidt was not a witness and all we know of his possession is derived from the testimony of members of the Hart family. There is no evidence of any inclosure of the land by Von Schmidt, and no evidence that he made any use of the land. He claimed to own it and, in 1878, caused public notice to be given that he would sell at public auction certain blocks of land which, it is claimed, included the land in question. Such sale was held, and Henry Hart bought certain land at the sale and took a deed from Von Schmidt. The fence shown on the diagram as the Spring Valley Water Company's fence was there at that time and Henry Hart testified that Von Schmidt told him it was put there "to keep the cattle out," but when it was erected or by whom does not appear, although the evidence was that it was in existence in 1866. The probability is that the water company caused it to be erected, as in 1866 it was maintaining a fence of which the fence referred to by Henry Hart was a part, extending from 15th Avenue, along Point Lobos Creek, to the ocean, and Engineer Schussler testified that it was to keep cattle from the creek and prevent

the water from pollution "and holding the land." Speaking
of this fence, he testified: "The company's fence, as I have
known it for many years, was along the line indicated on
Johnson's survey which is marked on this map here." He
did not state, however, who caused the fence to be built, as
it was there when he took office with the company.

Appellant attaches significance to the calls in Von Schmidt's
deed to Henry Hart. The description reads that, from the
point of beginning two hundred and fifty feet from the north-
east corner of Lake Street, the line runs "thence easterly at
the right angle and parallel with Lake Street, one hundred
and twenty feet, thence at a right angle northerly and parallel
with Twenty-first Avenue one hundred and twenty feet, more
or less, *to the southerly line of the lands of the Spring Valley
Water Company, thence northwesterly along said line of said
lands* one hundred and twenty feet, more or less, to the east-
erly line of Twenty-first Avenue, thence southerly along said
line of Twenty-first Avenue one hundred and twenty-four
feet, more or less, to the point of beginning." The call for
one hundred and twenty feet northerly to the southerly line
of defendant's lands and thence northwesterly along said line
opens a question whether the distance or the monument would
control, and it would seem also to suggest a recognition on the
part of Von Schmidt and his grantee that the southerly bound-
ary of defendant's land was the northerly boundary of plain-
tiff's land. From the view of the case we have taken we do
not find it necessary to consider this feature of the evidence.

Henry Hart testified that Von Schmidt told him that he
"went down to within 50 feet of the creek," which would in-
clude the land in dispute north of this fence as shown by the
diagram. Hart testified: "There were stakes there—surveyed
stakes—a number of stakes—the tops of the stakes with Von
Schmidt's name on them on the northerly line within 50 feet
of the water. Q. And was on your boundary line? A. It
was on our boundary line. Q. How many of these monu-
ments were there? A. There was about 12 on each side,
north, east, west and south." Did the fact that Von Schmidt
surveyed the land, staked the boundaries as shown and after-
wards pointed out the land as the land he was selling, con-
stitute actual possession or occupancy? Section 1006 of the
Civil Code provides as follows: "Occupancy for any period
confers a title sufficient against all except the state and those

who have title by prescription, accession, transfer, will or succession.'' The term ''occupancy'' as here used means possession, actual possession, as contradistinguished from constructive possession. ''Occupation'' is synonymous with the expression ''subjection to the will and control'' and with ''*possessio pedis*'' and signifies ''actual possession.'' (*Lawrence* v. *Fulton,* 19 Cal. 683, 690; *McKenzie* v. *Brandon,* 71 Cal. 209, [12 Pac. 428] ; *United States* v. *Rogers,* 23 Fed. 658, 666.) In *Plume* v. *Seward,* 4 Cal. 95, 97, [60 Am. Dec. 599], where the claim rested on possession, Mr. Chief Justice Murray said: ''From a careful examination of the authorities, I am satisfied there must be an actual *bona fide* occupation, a *possessio pedis,* a subjection to the will and control, as contradistinguished from the mere assertion of title, and the exercise of casual acts of ownership, such as recording deeds, paying taxes, etc.'' In *Murphy* v. *Wallingford,* 6 Cal. 648, 649, citing *Plume* v. *Seward,* the court said: ''A mere entry without color of title, accompanied by a survey and marking boundaries, is not sufficient.''

There is no evidence that Von Schmidt ever exercised any acts of possession except to survey the land and set boundary stakes. This we are satisfied was not sufficient to constitute occupancy as contemplated by the statute.

Having no title by possession or otherwise Von Schmidt conveyed none. Plaintiff must, therefore, rest her right to recover either upon her own occupancy, as we have held that term to mean under section 1006 of the Civil Code, or she must recover by reason of having established adverse possession. But occupancy, as we have seen, is synonymous with possession, and the possession must be actual and such as, if continued uninterruptedly for the statutory period, might. so far as possession is required, ripen into title. What was the character of the possession shown by plaintiff? We quote from the testimony.

Plaintiff, Catherine Hart (wife of Henry) testified that she went on the premises first 33 or 34 years ago. ''Q. Did you go upon the premises? A. I did not live on it at all. Q. Did you go upon it and see it—walk over it? A. Yes, sir, walked over it all the time. Q. How often? A. Most always go there—maybe once a week, or maybe twice a week, anyway, and the beautiful scenery you could see there and the ships coming in on the water and we would take lunch there some-

times.'' She testified that no one claimed title, to her knowledge, ''they never bothered me up to now. Q. Did you cultivate the land in any way? A. No, sir, never planted anything and never leased it to any one.'' She testified that there were no sidewalks there. ''The street was there and I could walk to the place; I was there often. I used to take the children there for the view; it was a beautiful place to visit.''

Henry Hart testified that after he bought the property he went on the property ''sometimes a dozen times a month, sometimes two or three times a week—I would go out there to have a good walk, ever since I bought it from Von Schmidt. Q. Prior to the time the Spring Valley Water Company served papers on you under the McEnerney Act did they ever make any claim to you of any interest in that property? A. Never. Q. Did they ever dispute your right to go upon the property? A. No, sir. Q. Did you claim ownership of the property when you went on the property? A. Yes, sir.'' He and his wife paid all the taxes. ''Q. Did Von Schmidt point out to you the property which you were then purchasing from him? A. He pointed to me the spaces—he said, 'that is my ground.' Q. Did you see a fence on the property at that time? A. There was a little rickety fence put up there for keeping the cattle from getting to the water. Q. Do you know how far that fence was north of Lake Street? A. I didn't go down that far to look at it at that time. Q. Did it go across the property which Von Schimdt pointed out to you as being his property? A. There was a creek of water that the Spring Valley used to use and there was a little fence to keep the cattle out. . . . Q. You never cultivated the property? A. No, I bought it same as I would buy any other piece of ground to hold it—to let it stop there. Q. Did you build a fence on the property? A. Me and my boy when we were putting the McEnerney Act on we had it fenced. Q. When did you put that fence on it? A. Here about two or three years ago—I forgot how long since we had the McEnerney Act.'' It appeared that he put the fence there in August, 1911. The evidence was that this so-called McEnerney fence was built after the defendant in this action had commenced an action to quiet its title under the McEnerney Act against all persons, in which this plaintiff was one of the

defendants. That action was commenced December 30, 1910, and is pending.

Henry Hart testified that, assisted by his son, he built a "fence five or six or eight years ago, three or four boards high. It was built five or six years ago when the teams used to be running over it and I didn't want the teams running over it. . . . It was to the south of Spring Valley." Plaintiff's son fixes the time this fence was built as a year or two before the McEnerney fence was built. This fence, however, did not inclose any of the land in dispute, to wit, the land north of the Spring Valley fence, and it does not definitely appear upon what part of the land the fence was except that it was south of the Spring Valley Company's fence and was to keep the teams from running over the land.

The most that can be said of this testimony is that for purposes of pleasure members of the Hart family once or twice a week went to the land to see the ships come in; to enjoy the beautiful view of the ocean it afforded and to have an occasional picnic there. They did this under claim of ownership and no one disputed their right, but there was nothing in these acts importing that kind of actual possession of the land which the law demands of one claiming ownership of it; there was nothing in them to indicate exclusive ownership or possession. It was no more than other persons residing in the city might have done and probably did. For more than thirty years plaintiff and her grantors had exercised this and no other kind of dominion over this land. The fencing done south of the Spring Valley Company's fence, as to which the time of its construction and where it was erected are indefinite, would not add anything to the claim of actual possession of the land in dispute; and the fence built in 1911 to comply with the requirements of the McEnerney Act was constructed to meet the claim of the water company that had, prior thereto, erected a fence around the land.

Did plaintiff establish her claim of adverse possession? The burden was on plaintiff to show that every element necessary to constitute adverse possession was made clear (1 Cyc. 1143); and the doctrine of adverse possession is to be "strictly construed and such possession cannot be made out by inference, but only by clear and positive proof." (1 Am. & Eng. Ency. of Law, p. 887.) The requirements in an action under the McEnerney Act are very fully and clearly set forth in

26 Cal. App.—43

*Lofstad* v. *Murasky,* 152 Cal. 64, 68, [91 Pac. 1008], in which the rule as stated in *Plume* v. *Seward,* 4 Cal. 95, [60 Am. Dec. 599], was approved.

We held, in *Mattes* v. *Hall,* 21 Cal. App. 552, 563, [132 Pac. 300], that whether the entry is with or without claim of title under a written instrument or without color of title "the possession must be evidenced by means having reference 'to the particular locality or quality of the property,' must be 'manifested in some appropriate manner.' " In *Cohen* v. *Anderson,* 22 Cal. App. 634, [135 Pac. 1096], we had occasion to consider the claim of adverse possession where the claimant sought to build up a right by proof of using the land as a summer resort, the only season of the year when it could be so used being a few months in the summer. We there held that adverse possession was not made out.

Respondent claims that "no particular use of the land was required of the plaintiff and her predecessors, and the uses to which it was put by them were such as were appropriate and reasonably adapted to the particular land, its condition and location and were sufficient proof of actual possession." There are cases in our California reports and elsewhere which would sustain the claim of possession where the evidence showed that the land was peculiarly adapted to the particular use to which it was being put, by reason of its condition and location. *Coryell v. Cain,* 16 Cal. 567, is cited by respondent, among other cases. But in that case the court said: "By actual possession is meant a subjection to the will and dominion of the claimant, and is usually evidenced by occupation—by a substantial inclosure—by cultivation, or by appropriate use, according to the particular locality and quality of the property." Mining claims and water privileges are mentioned as having a peculiar character.

There was no evidence tending to show that the property here involved possessed any exceptional quality or that its locality gives it any peculiar character or that its use was "according to the particular locality and quality of the property." While, no doubt, the land in question furnishes a beautiful view of the ocean and may be a delightful spot for picnics and to enjoy a morning's walk, there is no evidence that this is the highest or best or only use to which it may be put or to which it is adapted. The description of it by plaintiff's witnesses would indicate considerable value as a residence site. We cannot bring ourselves to believe that

the use made of this land was such as would meet the requirements of the statute or that it shows such possession as the cases uniformly hold to be essential in establishing adverse possession.

In *Loftstad* v. *Murasky* the court quoted approvingly from *Wolf* v. *Baldwin*, 19 Cal. 313, in stating what kind of actual occupation was required under the Van Ness ordinance and as applicable under the McEnerney Act, as follows: "A possession which is accompanied with the real and effectual enjoyment of the property. It is the possession which follows the subjection of the property to the will and dominion of the claimant to the exclusion of others; and this possession must be evidenced by occupation, cultivation, or other appropriate use, according to the locality and character of the particular premises. . . . It must, in other words, be an open, unequivocal, actual possession—notorious, apparent, uninterrupted, and exclusive—carrying with it marks and evidences of ownership, which apply in ordinary cases to the possession of real property."

It was said, in *Brumagim* v. *Bradshaw*, 39 Cal. 24, 46: "A mere *intention* to occupy land, however openly proclaimed, is not possession. The intention must be carried into actual execution by such open, unequivocal, and notorious acts of dominion as plainly indicate to the public that the person who performs them has appropriated the land and claims exclusive dominion over it. Anything short of this is not what the law denominates possession." The statute requires, as one of the prerequisites to the establishment of adverse possession, "that the land has been occupied and claimed for the period of five years continuously," etc. (Code Civ. Proc, sec. 325.)

Inasmuch as the occupation contemplated by the statute has not been sufficiently shown, the finding of ownership in plaintiff is not established and the judgment is not supported. This alone, without considering other objections made by appellant, compels a reversal.

So far as concerns the land in dispute, to wit, the land north of the Spring Valley Water Company's fence as shown on the diagram, the judgment and order are reversed, and as to the land south of said fence the judgment and order are affirmed; each party to pay his own costs.

Hart, J., and Burnett, J., concurred.