[Civ. No. 3825.   Fourth Dist.   Nov. 23, 1948.]

WALTER KLEIN, Appellant, v. S. R. CASWELL et al., Respondents.

Charles J. O'Connor for Appellant.

Hahn, Ross, Goldstone & Saunders and Thompson & Colegate for Respondents.

BARNARD, P. J.—This is a quiet-title action involving the ownership of a mountain lot in San Bernardino County.

In 1923, the defendant Harthan was part owner of a tract of land which had been subdivided into lots which were being sold for cabin sites. Title to the property was in the defendant Harthan at all times material here although she held as a trustee until the year 1942, when she became sole owner of any remaining lots.

In September, 1923, a selling agent in San Bernardino sold the lot in question on contract to the plaintiff for $175.50, payable in instalments. The contract was sent to Mrs. Harthan at Glendale, where she was then living, for her signature. This contract was never recorded. The plaintiff made the final payment on the contract in December, 1924, but through

oversight on the part of all parties concerned he never asked for and never received a deed to the property.

It appears, without conflict, that the defendant Harthan had no personal knowledge of the transactions here involved. Over the next 20 years more than 1,500 lots in this tract were handled, many sales were made and numerous contracts and deeds were executed. From 1923 to 1945, the lot in question was carried on the tax assessment rolls in her name. Each year a bill for taxes on all of the property in her name, without being segregated as to lots, was sent to her and paid by her. Some purchasers of lots paid their taxes directly, and each year the tax collector returned to her an amount representing such overpayments. She did not know which lots these over-payments represented and for this reason did not know that the plaintiff had, in fact, paid taxes on this lot each year during this period.

On May 27, 1945, another selling agent in San Bernardino acting in good faith and on the title as it appeared of record, sold this lot to the defendants Caswell for $250 cash, this price including a share of stock in a water company organized in 1927. A deed was executed and delivered on June 28, 1945, together with a policy of title insurance. This deed was recorded on August 30, 1945. After receiving this deed the Caswells erected a cabin on this lot which is of a value of $1,600 to $1,800.

On August 27, 1945, the plaintiff telephoned to Mrs. Harthan telling her that he had fully paid for this lot and that he had learned that it had been sold. She told him that she would investigate the facts. On August 29, 1945, she wrote the plaintiff a letter explaining that a mistake had been made without her knowledge and during her absence, calling attention to his neglect in failing for 20 years to ask for a deed, and stating that the new owner was entirely inno-cent of this mistake and had built upon the property. She then stated her regret for the error and in order to correct it offered to refund all that he had paid, including any taxes, or to give him another lot equally desirable, whichever he desired. On September 3, 1945, while working on his new cabin the defendant Caswell was told by the owner of the adjoining lot that this plaintiff claimed to be the owner of the lot in question. He immediately contacted Mrs. Harthan who assured him that she would try to straighten the matter out. It appears, without dispute, that Caswell had no pre-vious knowledge, actual or constructive, of plaintiff's claim

or interest in the property, and that the reselling of the lot occurred purely by mistake. This mistake was a natural one where so many lots and so many old records were being handled and stored in different offices by various people.

The complaint in this action is in the usual form of quiet title, naming both the Caswells and Mrs. Harthan as defendants, and with a second cause of action which is not material here. By an amendment, a third cause of action was added as against Mrs. Harthan alleging slander of title in that she maliciously conspired with the selling agent for the purpose of depriving the plaintiff of his property and reselling the same for her own profit, and praying for damages thereby caused. The court made separate findings of fact and conclusions of law as between the plaintiff and the defendants Caswell, and as between the plaintiff and the defendant Harthan. Separate judgments were also entered.

As between the plaintiff and the defendants Caswell it was found that the plaintiff had a contract to buy the property but had never received a deed and no notice of any kind was given to the Caswells; that the plaintiff is not the owner of the property and has no claim as against the Caswells; that the Caswells are the owners of the property and hold the title thereto; that the Caswells purchased the property in good faith for a valuable consideration without notice, either actual or constructive, of any right or claim on the part of the plaintiff; that the plaintiff did not acquire title to the property by adverse possession; that the acts and conduct relied upon by the plaintiff and his agents are not sufficient to establish an adverse user; and that the essential allegations of the complaint are not true. As conclusions of law, it was found that the Caswells were entitled to judgment against the plaintiff, that the Caswells are the sole owners of the property, and that the plaintiff is therefore barred from asserting any claim of right, title or interest therein. Judgment was entered accordingly, quieting title to the property in the Caswells. As between the plaintiff and Mrs. Harthan, the court found in all respects in her favor and judgment was entered that the plaintiff take nothing. The plaintiff gave notice of appeal from both of the judgments thus entered.

No question is here raised with respect to the judgment in favor of Mrs. Harthan on the third cause of action. No attempt to recover from her for breach of contract was made, and the essential elements of slander of title were not proved. On his appeal from the judgment in favor of the Caswells the

appellant abandons any contractual claim to this lot and relies entirely on the contention that it conclusively appears that he acquired title thereto by adverse possession, thus eliminating any question of innocent purchasers without notice.

Appellant's main contention is that the court's findings that the acts and conduct relied upon by him were not sufficient to establish an adverse user, that he did not acquire title to the lot by adverse possession, that he had no right, title or interest in the lot, and that the Caswells are the owners of the lot, are not supported by the evidence. With respect to the requirements for establishing adverse possession, as set forth in section 323 of the Code of Civil Procedure, it is not contended that this land had been cultivated or improved, that it had been enclosed, or that it had been used for the supply of fuel or timber or for the purposes of husbandry. It is contended, however, that it had been used "for the ordinary use of the occupant." It is argued that slight use of land is sufficient where the nature of the land is such that only such slight use can be made; that ordinarily people in this area used their property only occasionally and for vacation use; that where entry is made under a color of title the possession need only be such as to give notice to the community where the land is situated that it is being exclusively used and enjoyed by the person in possession; and that the evidence here requires a finding that these rules and principles were fully complied with by the appellant. It is further argued that it must be assumed that he thus acquired title by 1929, although most of his evidence related to a period of about eight years preceding 1945.

The appellant was not present at the trial. His wife testified that during the 22-year period she and her husband visited the lot many times on weekends or on holidays, at times taking friends with them; that they had picnics on the lot; that on certain occasions "we cleaned it up the best we could"; that she had not visited the lot for two years or over; that she had never stayed overnight on the lot but on occasions her husband had camped there overnight; and that in some years her husband had camped on the lot for a week. A neighbor who had lived on the adjoining lot for some 12 years testified that for several years, before he knew who owned the lot in question, his clothesline extended over a portion of it; that he occasionally drove over the rear of it with a load of wood; that at times some of his wood was

piled on it; that he left part of an old truck on the edge of it; that later the appellant gave him permission to continue this use of it and he agreed to keep the lot "cleaned up"; and that each year thereafter he raked up and removed pine needles therefrom. His wife testified to the same effect.

On the other hand, there was evidence of the use of other lots in the neighborhood for cabins. Several witnesses testified that they occupied cabins in the neighborhood or passed this lot frequently, that they had seen no evidence of anyone using it or that it was being used, and that it always looked like other vacant lots in the neighborhood. Mrs. Harthan testified that she had been going there for 25 years and had a cabin there; that she passed this lot every time she went to her place; that she went there frequently in the summer and about once a month in the winter; that she never saw anything on this lot to indicate that people were using it; and that "I didn't see any difference at all; it has been just the same." The neighbor who claimed to have an agreement with the appellant about using the lot watched the Caswells build the cabin for two months, and even assisted them in cutting trees for that purpose, before he said anything to them to indicate that he or anyone else had any interest in the lot.

The slight use that can be made of land referred to in *Posey* v. *Bay Point Realty Co.*, 214 Cal. 708 [7 P.2d 1020], refers to a situation where the land is adaptable only for slight use and not to a situation where a claimant because of illness, distance and business confinement is able to make only slight use of it. The "ordinary use of the occupant" referred to in section 323 Code of Civil Procedure refers to something more than the occasional use of the property for picnics or for camping. The ordinary use of lots in this subdivision was for the purpose of building cabins thereon. The possession required by the statutes and by the decisions is one that must be so open, notorious and continuous as to give notice to others that it is hostile to the record owner and must be such as to indicate a claim of right, at least to the extent of putting a prudent man upon inquiry. " 'It must, in other words, be an open, unequivocal, actual possession—notorious, apparent, uninterrupted, and exclusive—carrying with it marks and evidences of ownership, which apply in ordinary cases to the possession of real property.' " (*Lofstad* v. *Murasky*, 152 Cal. 64 [91 P. 1008].)

It cannot be said, as a matter of law, that a possession and use here appear which was sufficient to constitute adverse

possession under the statutes. If the findings were the other way the sufficiency of the evidence would be more questionable. In any event, the evidence sufficiently supports the findings as made. (*Hart* v. *All Persons, etc.*, 26 Cal.App. 664 [148 P. 236]; *Cohen* v. *Anderson*, 22 Cal.App. 634 [135 P. 1096]; *Madson* v. *Cohn*, 122 Cal.App. 704 [10 P.2d 531]; *Kohler* v. *Thomas*, 213 Cal. 356 [2 P.2d 339].)

The appellant further contends that the court erred in that it determined the question of adverse possession as a finding of fact when such determination is properly a conclusion of law which must be based upon ultimate facts found, and that the conclusion of law that the Caswells are the sole owners in fee simple of this property is not supported by any valid finding or by any evidence. No prejudicial error appears in this connection. This was a quiet-title action in which the appellant relied on title by adverse possession without directly pleading it. The court followed the language of the complaint and found against the appellant with respect to the ultimate fact of ownership, which is sufficient. (*Hess* v. *Moodey*, 35 Cal.App.2d 401 [95 P.2d 690].) Under such circumstances the ultimate finding of ownership or no ownership is sufficient (*Richert* v. *City of San Diego*, 109 Cal.App. 548 [293 P. 673]; *Cooley* v. *Miller & Lux*, 156 Cal. 510 [105 P. 981]; *Colver* v. *W. B. Scarborough Co.*, 73 Cal.App. 421 [238 P. 1096]; *McArthur* v. *Goodwin*, 173 Cal. 499 [160 P. 679]; *Willis* v. *Holback*, 33 Cal.App.2d 145 [91 P.2d 140]). The court here found that the appellant was not the owner of this property; that the defendants Caswell are the owners; that the appellant did not acquire title to the lot by adverse possession; that the acts and conduct relied upon by the appellant were not sufficient to establish an adverse user; and that any conflicting allegations of the appellant's complaint were not true. As a conclusion of law, it was found that the respondents Caswell are the sole owners in fee simple of the lot in question. The findings of fact are sufficient, and the conclusion of law is supported by the findings as well as by the evidence.

The further contentions that two of the findings are inconsistent and that one of them is not supported by the evidence, require no extended consideration. They are neither sustained by the record nor would they be controlling if they were thus sustained.

The judgments appealed from are affirmed.

Griffin, J., and Mussell, J., concurred.