[Civ. No. 3854. Fourth Dist. Jan. 21, 1949.]

JOE CASALETTI et al., Appellants, v. GEORGE McGUIRE et al., Respondents.

Joseph V. Mazziotta and Joseph T. Ciano for Appellants.

Guthrie, Lonergan & Jordan for Respondents.

GRIFFIN, J.—Plaintiffs commenced this action in 1945, to quiet title to a strip of land about 23 feet in width and lying between Lots 4, 5, 12 and 13, owned by plaintiffs, and Lots 3, 6, and 11, owned by defendants McGuire, and Lot 14, owned by defendants Frost, all in Block I, Etiwanda Colony Lands.

The complaint contains two counts. The first sets forth the usual allegations to quiet title. The second is for ejectment. The answer denied generally the allegations of plaintiffs' complaint and alleged possession and title in defendants, and as additional defenses that more than 20 years prior to the commencement of the action, there had existed an uncertainty or belief of uncertainty in the location of the boundary lines between the two tiers of lots, and that there had been an agreement between the owners or their predecessors in interest as to the fixing of the line and designation thereof on the ground, and a subsequent occupation of the successors in interest, including the plaintiffs and defendants, in accordance with the line so established on the ground, and an improvement by the defendants and their predecessors in interest of the lands lying easterly of the agreed line; that the plaintiffs and their predecessors for more than 20 years had acquiesced in and conformed the use of Lots 4, 5, 12 and 13, to the agreed boundary line, accepting the same as the boundary line between the two groups of lots; that for more than 20 years prior to the commencement of the action, after the establishment of the agreed line, the plaintiffs and their predecessors in interest observed the improvements, by the defendants and their predecessors, of all the areas lying easterly of the agreed line, and that the plaintiffs and their predecessors did not object to the improvements until the year 1944; that the plaintiffs were barred by their own laches from maintaining or prosecuting such an action; that section 318 of the Code of Civil Procedure constituted a bar to each. count of the complaint; that plaintiffs and their predecessors had not had possession of nor did they own the land in dispute within five years preceding the commencement of the action, but that defend-

ants and their predecessors did have possession thereof since 1926, under a claim of title, and claimed to be the owners thereof and paid taxes thereon.

The trial court found generally in favor of defendants on each of these claimed defenses, prescribed a definite line which was claimed by defendants as the boundary line between said lots, and gave judgment that plaintiffs take nothing under their complaint.

On appeal plaintiffs argue mainly that the evidence is insufficient to support any one of the claimed defenses or the findings thereon.

Plaintiffs acquired title to their land by deed in 1925. Defendants Frost acquired Lot 14 in 1913. One James Isle acquired Lots 3 and 6 in 1907, and in 1932, by decree of distribution, title to these two lots went to defendants McGuire who, in 1928, purchased Lot 11.

Plaintiffs' property was surveyed, at their expense, in 1944, and defendants had theirs surveyed in 1946. The easterly boundary of plaintiffs' property, as determined by plaintiffs' surveyor, is approximately 23 feet east of the line fixed by defendants' surveyor, and on this latter line stands a row of eucalyptus trees, referred to as "wind break." Along or near the same line, at varying distances apart, are buildings, berry poles, pieces of old fences and wire, stand-pipe, citrus trees, a stone wall, and lemon trees. Maps of the two surveys were received in evidence together with a Chaffee Brothers map made in the year 1883, to which the original deeds referred.

Plaintiffs' engineer testified that the "old time" map was "somewhat uncertain"; that it shows Block I to be exactly square; that each lot is shown to be 10 chains square and that is not exactly the case; that the old map shows some streets to be 66 feet wide when in fact they are only 60 feet in width; and that he surveyed Block I without regard to the natural landmarks.

Defendants' engineer, stipulated to be duly qualified, testified that he prepared a map of his survey and used the physical features as a basis for determining the boundary; that the physical objects found fell into a natural relationship with a straight line boundary; that he found a vineyard planted west of that line and citrus trees to the east of it; that if the line were as indicated by plaintiff, a certain number of citrus trees would be to the west of it. Photographs taken from several positions indicated were received in evidence. The trial court viewed the premises. It was stipulated that

the county assessor, from 1935 to 1945, inclusive, assessed plaintiffs' claimed lots to them and assessed defendants' claimed lots to them, each in even 10-acre lots, and that plaintiffs were assessed for vines and not citrus, and vice versa as to defendants and that taxes were paid accordingly.

Mr. Frost testified that in 1913, when he acquired the property, the back portion was in brush; that a wash came through it and it was cleared up and planted to vines; that the Casaletti property was unimproved but was later cleared up and planted to vineyards; that before it was planted he did not know where the boundary line was; that in 1914 or 1915 he had a surveyor fix the west boundary between his lot and the Casaletti property; that he then planted a row of "blue gum" trees on the west line or immediately inside the dividing line; that the surveyor set stakes; that one Stahl was a coowner of all the property in that area at that time; that he was "pretty sure" he (Stahl) then owned the Casaletti property; that when he planted the "blue gums" Stahl said nothing to him about the boundary line; that as agent, in 1925, he sold the Casalettis their property; that he accompanied him to the property; that at that time the windbreak was about 10 years old and quite high; that he had a fence along the line established by his surveyor and his land, up to that line, was in citrus trees then; that Casaletti planted his property up to that same line; that he saw all of the property and must have seen the windbreak, fence and trees, and that he made no comment about the boundaries; that the Casalettis never discussed any dispute about the line until the survey in 1944.

As to the other two 10-acre tracts there was evidence that in 1907 a survey was made and a stake was found "in the end of the two tens," northwest quarter Lot 3, and two rows of eucalyptus trees were planted on the north end and also two feet inside on the west side and on the McGuire land; that Lots 3 and 6 were planted up to that line in vineyards at that time. As to Lot 11 it was testified that in 1928 it was cultivated, except one-fourth next to the Casaletti property and that one-fourth was a wash; that there was then a rabbit fence existing on the property line running across the wash, which fence was put up by the Casalettis in 1926 or 1927; that rocks were picked up and piled along and near defendants' claimed line; that the one quarter of defendants' 10-acre tract was cleared and planted, and that at no time did the Casalettis make any objection as to any boundary line until the survey in 1944.

It is first argued that this evidence is insufficient to support the finding that an agreed boundary line resulted from any uncertainty or belief in uncertainty in the location of the true line; that there must be an agreement between the parties, express or implied, fixing the line, and that there must be an actual designation of the line upon the ground and occupation in accordance therewith, citing *Roberts* v. *Brae,* 5 Cal.2d 356 [54 P.2d 698]; and *Johnson* v. *Buck,* 7 Cal.App.2d 197 [46 P.2d 771].

The argument is that the testimony shows an early survey was made and that the McGuires were therefore *certain,* rather than *uncertain,* as to where the boundary line was located; that mere acquiescence may imply an agreement but cannot alone constitute sufficient proof of one, citing *Dibirt* v. *Bopp,* 4 Cal.App.2d 541 [41 P.2d 174]; *Stutsman* v. *State,* 67 N.D. 618 [275 N.W. 387]; and *State* v. *Vanderkoppel,* 45 Wyo. 432 [19 P.2d 955].

Since this is an action commenced by plaintiffs to quiet their title to property ostensibly cultivated and occupied by defendants, the burden of proving the allegations of their complaint, by a preponderance of the evidence, rested upon them, and plaintiffs must recover upon the strength of their own title and not upon the weakness of defendants' title. (*Hill* v. *Barner,* 8 Cal.App. 58 [96 P. 111]; *Rockey* v. *Vieux,* 179 Cal. 681 [178 P. 712].)

The court found in all respects in favor of defendants on all defenses claimed, any one of which, if legally supported, would be sufficient to defeat plaintiffs' claim. There was a sharp conflict between the testimony of the two surveyors concerning the true dividing line of the two properties. It appears to us, without specially analyzing all of the claimed special defenses and the evidence supporting them, that the evidence would and does clearly support the ultimate finding that the true line is the one found by the trial court, as indicated by defendants' surveyor, which was according to the map prepared by him and received in evidence, and that plaintiffs take nothing by their complaint. The question of the correctness of the two surveys was for the trial court to determine from all of the evidence produced and its determination will not be reversed on appeal. (*Strauss* v. *Canty,* 169 Cal. 101 [145 P. 1012].)

In addition to the finding on the special defenses the trial court made the general finding that the defendants were the owners of the property described, including the strip of land

in question and that the plaintiffs were never seized nor possessed of the land lying easterly of the line described; that all of the allegations of the answer were true and none of the allegations of the complaint were true.

It has been held that it is sufficient, in a quiet title action based upon the general claim of ownership and possession, to find that, at the commencement of the action, the successful party was the owner and entitled to possession of the property without finding also as to the evidence proving ownership. (*Gruwell* v. *Rocca,* 141 Cal. 417 [74 P. 1028]; *Daly* v. *Sorocco,* 80 Cal. 367 [22 P. 211]; *Dorris* v. *McManus,* 4 Cal.App. 147 [87 P. 287].)

In the instant case the claims of title by adverse possession and agreed boundary line were only two of the several claims of defendants. There is authority to the effect that when one alleges title by deed and also by prescription and the court properly finds in favor of the former, failure to find as to the latter is not prejudicial to the adverse party. (*Wolf* v. *Gall,* 176 Cal. 787 [169 P. 1017]; 22 Cal.Jur. § 56, p. 186.) Likewise, in *Labish* v. *Hardy,* 77 Cal. 327 [19 P. 531], it was held that failure to find upon a plea of the statute of limitations is without prejudice where it is found that the plaintiff had no title.

*Klein* v. *Caswell,* 88 Cal.App.2d 774 [199 P.2d 689], was a quiet title action in which the plaintiff relied on title by adverse possession without directly pleading it. In its findings the court followed the language of the complaint and found against the plaintiff with respect to the ultimate fact of ownership. This court there followed the holding in *Hess* v. *Moodey,* 35 Cal.App.2d 401 [95 P.2d 690]; *Richert* v. *City of San Diego,* 109 Cal.App. 548 [293 P. 673]; *Cooley* v. *Miller & Lux,* 156 Cal. 510 [105 P. 981]; and cases therein cited, and held such finding sufficient, if supported by the evidence.

As heretofore indicated, the deeds and decree of distribution referred to in the evidence and the testimony of defendants' surveyor, though conflicting with the testimony of plaintiffs' surveyor, as to the result of their respective surveys, fully support the general finding that plaintiffs did not have any claim or interest in the property involved.

No useful purpose will be served in discussing the other reasons found by the court why plaintiffs' claim of title should not prevail.

Judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.