[S. F. No. 13578. In Bank.—January 28, 1932.]

MARY M. POSEY et al., Appellants, v. BAY POINT REALTY COMPANY (a Corporation) et al., Respondents.

Frank Thunen for Appellants.

Heller, Ehrman, White & McAuliffe and Webster V. Clark for Respondents.

PRESTON, J.—Action to quiet title to some eighty acres of land bordering Suisun Bay. Judgment for defendants. Appeal by plaintiffs.

The court made general findings showing the facts to be substantially as follows: Said land is swamp and tule land fronting the bay, being a part of the Gum Tree Ranch and also of Survey No. 120, Swamp and Overflowed Lands of the County of Contra Costa, conveyed to this state by federal grant in 1850 and by patent to J. E. Durham on June 3, 1893. It comprises approximately what is desig-

nated the N.½ of the NE.¼ of section 6, township 2 N.,
R. 1 W., M. D. B. & M. In conveyances of said Survey
No. 120, commencing about the year 1860, the parties cus-
tomarily conveyed the whole of said survey under the
common error of particularly describing it as the S.½ of the
NE.¼ and fractional N.½ of the SE.¼ of said section 6,
containing 101.09 acres of land, thus omitting from said
description the quarter-section here in controversy, although
the intent to convey it appeared from the total acreage
specified and general descriptions of land running to and
"meandering up the bay".

On April 19, 1893, Durham and wife conveyed all of
Survey No. 120 to Dodge by grant, bargain and sale deed
and on the following day they also gave him a quitclaim
deed to the N.½ of the NE.¼ of said section 6. On April
19th, also, Dodge executed and delivered to Ambrose a mort-
gage covering all said Survey No. 120 and on August 9,
1893, by grant, bargain and sale deed, he conveyed, subject
to said mortgage, the whole Survey No. 120 to Posey and
also executed to him a separate quitclaim deed to said N.½
of the NE.¼ of section 6. On November 10, 1900, to
satisfy said mortgage, Posey and wife delivered to Ambrose
a grant, bargain and sale deed which contained the par-
ticular description found in former conveyances of said 101
acres more or less but for the first time failed to specify
that it covered all of Survey No. 120. Plaintiffs, heirs of
Posey, claim that there was no intention on his part to
include the parcel in suit in said deed to Ambrose and the
trial court made a special finding to this effect, further
finding that the record, or paper, title to said lands was
vested in plaintiffs. From the time of said deed, however,
Ambrose and his successors, including defendants, paid all
taxes assessed against the whole of Survey No. 120, includ-
ing said property, and Posey and his successors asserted
no claim of ownership, within defendants' knowledge, to any
part of it until 1925. Further conveyances of said ranch
made in 1908 by Ambrose to Schidler and by Schidler to
Burgess and in 1911 by Burgess to defendant company, all
covered land to the bay. For the latter conveyance defend-
ant company paid $61,000, and it covered all of Survey
No. 120, particularly including the property in suit, specifi-

cally described, respecting which said defendant had no notice of any omission, exception or reservation.

The court found that defendant company, by its tenant, defendant Noia, to whom it leased the entire tract in 1915, entered into actual possession of said property in 1917 under claim of title, exclusive of other right, founded upon said Burgess deed and has ever since used, occupied and possessed said property openly, uninterruptedly, continuously, adversely and in manner hostile to title of plaintiffs and all others, said occupancy covering a period of more than five years prior to commencement of this action, and that since 1912 said defendant has paid all taxes assessed against said property.

The court also made special findings to the effect that the land was only good for pasturage, which was of very poor quality and little value, not always available because of salinity of the water and high water in the bay; that said land and a small parcel to the west, owned by strangers, was protected from encroachment on the north by the bay, on the east by a fence constructed by strangers and on the south and west by a natural slough sufficient to turn neat cattle but not horses, except that since 1917 it had been accessible to neat cattle and other stock by an open bridge over said slough also constructed by a stranger to this action. Upon these general and special findings said decree in favor of defendants was entered and plaintiffs appealed.

Appellants question only the court's action in upholding respondents' defense of adverse possession. They claim that as the property was totally inaccessible until the building of the bridge by a stranger in 1917, it cannot be said that it was entered, possessed and occupied adversely by respondents, particularly in view of the further fact that respondents' use of it was slight and only periodical and the open bridge permitted a similar common occupation and use of the land for pasturage for the stock of third persons as well. In other words, appellants claim that respondents have failed to prove three elements essential to the perfecting of their claim by adverse possession, to wit: "continuous", "exclusive" and "uninterrupted" use.

It is our opinion, however, that the evidence justified the trial court in its conclusion and sufficiently satisfied all necessary requirements. Property continuously occupied

and possessed under claim of title, exclusive of other right, founded upon a written instrument of conveyance, for five years, is deemed to have been held adversely (sec. 322, Code Civ. Proc.) and section 323 of said code, defining what may constitute an adverse possession under written instrument, specifies that land is deemed to have been so possessed and occupied "3. Where, although not inclosed, it has been used . . . for the ordinary use of the occupant." The record here supports the view that the occupation and use made of the land in suit meets the above definition.

The court was warranted in crediting the testimony of respondent Noia, which, although given in broken English, was apparently sincere and intelligible. These tule lands offered slight pasturage only during times of fresh water. Mr. Noia testified that from time to time during his entire occupancy, commencing in 1915, with the exception of possibly the first years, he made such use of the tules as he could for heifers and dry stock; that he could not put his milch cows there as it dried them up; that with his increase in stock from year to year his use of the tules increased proportionately; that especially in later years, after fresh water was brought in, he kept a substantial number of cattle there.

Adverse possession is only claimed from the year 1917. The evidence supports the view that from that year and over the required period this swamp was possessed and used, not primarily for what is commonly called "pasturage" land but "for the ordinary use of the occupant", which was to afford during a portion of the year refuge for a certain class of stock, as a supplement to the real pasture on the highlands, all in connection with the usual and ordinary occupation and use of the entire ranch. If but slight use can be made of land claimed adversely, then the requirements of continuous and uninterrupted occupancy are satisfied, if such slight use as can be made is made thereof. This is the plain meaning of the clause "for the ordinary use of the occupant"; it means a use appropriate to the location and character of the property, each case resting upon its own peculiar facts. (*Andrus* v. *Smith,* 133 Cal. 78 [65 Pac. 320], and cases there cited; *Montgomery & Mullen Lumber Co.* v. *Quimby,* 164 Cal. 250 [128 Pac. 402]; *Goodrich* v. *Mortimer,* 44 Cal. App. 576 [186 Pac. 844]; *Weyse* v. *Biedbach,* 86 Cal. App. 712, 721 [261 Pac. 1086], and cases there cited.)

▪The fact that access to the land was gained by the bridge of a stranger and that his cattle as well as the cattle of others on occasions strayed on the land is immaterial in this particular case, for the evidence shows that in 1917, when they had the county records searched, if not before, appellants had actual knowledge of the adverse claim of respondents to these tules; that during the entire period said land was held by respondents as their own, under a claim of title exclusive of any other right and in a manner hostile and not in subordination to the claim of any other person, said trespasses being clearly without intent to oust them or assert any claim hostile to their own. Respondents at all times asserted openly, visibly and notoriously their adverse claim, not only through the lease to respondent Noia and his occupation of the land but also through leases to others in the vicinity, granting them permission to make temporary use thereof.

The several other defenses of respondents need not be mentioned. Further discussion is unnecessary. The judgment is affirmed.

Shenk, J., Seawell, J., Curtis, J., Langdon, J., and Waste, C. J., concurred.