[Civ. No. 5301.   Fourth Dist.   Apr. 11, 1956.]

LENORE T. CLAY, Respondent, v. MARIE TEAGUE SAUTE, Appellant.

R. Arthur Bellman and Stutsman, Hackett & Nagel for Appellant.

L. Kenneth Say for Respondent.

BARNARD, P. J.—This is an action to quiet title to 40 acres of land. The plaintiff and the individual defendants are the children of Charles C. Teague, now deceased. His son, as administrator of his estate, was also named as a defendant. The complaint, which is in the usual form, was filed on November 12, 1954. Marie Teague Saute, who was a half sister of the other parties, filed an answer alleging that she is and for a long time has been the owner and in possession of this land, denying that any of the other defendants have any interest therein, and praying that title to the land be quieted in her. Gloria Dale and Charles B. Teague, individually and as administrator, filed a separate answer alleging that the deceased was the equitable and beneficial owner of this land, and praying that title be quieted in Charles B. Teague as administrator of the estate of the father.

From the evidence at the trial it appears that a general power of attorney from Marie Teague Saute to Charles C. Teague was recorded on July 24, 1923, and that thereafter as long as he lived Charles C. Teague had and kept all of his property in Marie's name. During some 20 years he bought and sold a great deal of property in her name that she never knew about. The record does not disclose when the title of the land here in question was taken in her name except that it was prior to 1929, but there is evidence that during his lifetime she did not know that title to this property stood in her name.

On April 1, 1942, Charles C. Teague conveyed this land to the plaintiff by a deed from Marie Teague Saute, which he signed as her attorney in fact. On April 3, at the hospital where Mr. Teague had gone for an operation, he told the plaintiff to be sure to go to a title company before she went home and pick up a deed that a Mr. Patterson had for her. He also explained it to her and told her he wanted her to have the property so that her son would eventually benefit from it. Mr. Teague was operated on the next morning, April 4, 1942, and died that night. The plaintiff went to see Mr. Patterson immediately after the funeral and at her request he recorded the deed, which was then mailed to the plaintiff. A week or two later Charles B. Teague asked her to deed the property to him, which she refused to do. He made similar demands at several times in later years, which were refused. He was appointed administrator of the father's estate in 1951, but nothing was done by any of the defendants to further assert a claim to this property until after this action was brought by the plaintiff.

There was also evidence that on October 26, 1927, Charles C. Teague was declared incompetent and incapable of managing his property, and that he was restored to capacity on January 24, 1929. There was also evidence that a judgment was entered in the Superior Court of Fresno County on February 27, 1940, decreeing that Marie Teague Saute was the owner of this land. In this connection, it appears that two attorneys had sued Mr. Teague for attorneys' fees and had attached 80 acres of land, which included the land here in question. In that action Mr. Teague filed an answer alleging that Marie Teague Saute was the owner in fee of the property. Before Mr. Teague was called on to testify in the action the matter was compromised, and a stipulated judgment was

entered giving the attorneys 40 acres of the land and decreeing that Marie was the owner of the remaining 40 acres. An attorney, who had represented Mr. Teague from 1925 until the time of his death, testified that in the beginning Mr. Teague told him that he was going to hold his property in Marie's name and that he had her power of attorney; that he did this because of some trouble he was having with his old partners; that on many occasions he conveyed property in Marie's name by using his power of attorney; that this was the way he handled his property through the years and this was the way he did his business; that the property here in question was included as a part of Mr. Teague's property in the guardianship proceeding; that Mr. Teague had always dealt with the property in question as his own; that he talked to Mr. Teague a few minutes after the deed to the plaintiff was executed on April 1, 1942; that Mr. Teague then told him that he had deeded this property to Lenore; and that he did not say that he had deeded it to Lenore for the purpose of having her deed it to the other children.

The court found in all respects in favor of the plaintiff finding, among other things, that on April 1, 1942, and prior thereto, Charles C. Teague was the equitable and beneficial owner and in possession of the land in question; that the bare legal title to said land was in the name of Marie Teague Saute; that aside from the holding of said bare legal title Marie had no right, title, interest or claim in or to said property; that at said time and prior thereto she well knew that she had no right, title or interest in or to said property, except for holding the bare legal title for the use and benefit of her father; that on April 1, 1942, Charles C. Teague was the attorney in fact of Marie Teague Saute and was empowered and authorized by her to execute and deliver a valid deed conveying said property; that on that day Marie Teague Saute by said Charles C. Teague, her attorney in fact, executed and delivered to the plaintiff a grant deed conveying title to said property to the plaintiff; and that since said date the plaintiff has been and now is the owner of and entitled to the possession of said real property. It was also found that for more than five years last past the plaintiff has been and now is in the open, notorious, exclusive and adverse possession of this real property under claim of right and by virtue of said deed, and that for more than five years last past the plaintiff has paid all taxes levied or assessed on said property. Judgment was entered quieting title to this property in the plaintiff, from

which judgment the defendant Marie Teague Saute has appealed.

This is an equity case and there is very strong evidence that Charles C. Teague was the equitable and beneficial owner of this land at the time he conveyed it to this respondent, and for many years prior thereto. There was no evidence tending to show that the appellant had any beneficial interest in the land or equitable right thereto, with the possible exception of the statement made by Mr. Teague in his answer in the 1940 suit for attorneys' fees, to the effect that this appellant was the owner in fee of the property. ■■ The appellant now contends that the judgment entered in that action is conclusive of her ownership under the doctrine of res judicata. That judgment was entered by stipulation as a result of a compromise between the parties to that action which, in effect, left the 40 acres here in question in the same situation as it was before the action was filed. None of the parties to the present action was a party to that action. Nothing in that proceeding is important here except as an admission against interest on the part of Mr. Teague, and that admission is not conclusive as to the rights of the parties involved in the present action. The most that can be said is that it presents some conflict in the evidence. It clearly appears that the purpose and intent of the judgment was to settle the controversy between the parties, and to leave the title to this 40 acres where it was before that action was commenced.

It is next contended that Mr. Teague had no authority to execute the deed to the respondent on April 1, 1942, and that this conveyance is void. It is argued that under section 2355 of the Civil Code an agency is terminated by the incapacity of the agent to act as such; that the fact that Mr. Teague was declared incompetent in 1927 terminated the agency created by the power of attorney rather than merely suspending it; that in any event a general power of attorney does not authorize the agent to act for the benefit of himself or a third person; and that since this deed purported to be a gift of real property it was an unauthorized act of the agent.

■■ While one of the ways in which an agency may be terminated under section 2355 of the Civil Code is because of the incapacity of the agent to act as such, this may reasonably be construed as referring to the incapacity of the agent at the time he performs the questioned act. It cannot fairly be construed as automatically terminating the effect of a

general power of attorney regardless of the circumstances, and regardless of prior and future acts and conduct disclosing the real situation. The evidence here indicates that Mr. Teague was not actually incompetent and that that proceeding was instituted for other reasons. While that fact does not alter the effect of the adjudication of incompetency, it is a matter of evidence in connection with other equitable considerations.

The property here in question was listed in the guardianship proceedings as belonging to Mr. Teague, and the order restoring him to capacity which was entered 15 months later authorized him to act with respect to that property. The power of attorney was in effect for several years before the adjudication of incompetency was made, and all parties continued to act as though it were still in effect for many years after the order of restoration was made. Under the circumstances, including the conduct of the parties, it may not be held, in this equitable action, that the guardianship proceeding had the effect of absolutely terminating the agency created by the power of attorney. As shown by all of the evidence that agency was created and maintained for many years for the sole purpose of enabling Mr. Teague to keep title to his property in the name of the appellant and at the same time enabling him to dispose of and handle his property as he saw fit. It was thoroughly understood that the appellant had no interest in the various properties which her father handled in that way, that he was authorized to dispose of them, and that she was merely holding the bare legal title for his benefit. Since he was the equitable owner, his failure to act for her benefit would not involve a violation of trust on his part. All of the evidence indicates that Mr. Teague was authorized by the appellant to convey this property and he was free to make a gift of it if he chose.

Finally, appellant contends that the evidence is not sufficient to support the findings with respect to adverse possession. It is admitted that the appellant paid taxes on the property for the 5-year period and that she claimed under color of title through her deed. It is argued, however, that the evidence is not sufficient to show actual possession, open and notorious, for five years. Appellant relies on *Lofstad* v. *Murasky*, 152 Cal. 64 [91 P. 1008] and *Klein* v. *Caswell*, 88 Cal.App.2d 774 [199 P.2d 689]. The first of these cases had reference to the "actual" possession required under the special provisions of the McEnerney Act, as distinguished from the mere constructive possession which follows from the legal title. In the

Klein case, the party had not used the lot in the manner for which it was adapted and in which such a lot was commonly used.

The evidence here disclosed that this 40-acre tract was situated in what was commonly known as the west side of Fresno County. It was uninclosed and had no water on it. It could not be used for farming without water. While there may have been some pasturage in the spring in some years it was common knowledge that such a small tract could not be leased for pasturage except in connection with a larger tract. There was evidence that the plaintiff leased it in September, 1953, for five years at $5.00 an acre to a man who was then carrying on large cotton farming operations in that vicinity. In her closing brief the appellant contends that there is evidence that the respondent had an opportunity to lease the land in an earlier year. The respondent testified that she could not remember when this was, and explained her refusal to lease it at that time by some statement concerning a road and ditch that the proposed renter wanted on the property. The facts were not sufficiently brought out to disclose whether or not there was a fair opportunity to lease it at that time. The respondent testified that she visited the property on an average of once a year, and there is no question that she openly claimed ownership at all times after 1942, and opposed all attempts made by her brother to claim an interest therein. The question was one of fact for the trial court, and the evidence sustains the conclusion that the respondent had made such use of the property as she could, considering the use for which it was adapted and the manner in which such property was commonly used at the time. The evidence was sufficient, under the principles relied on in the case of *Posey* v. *Bay Point Realty Co.*, 214 Cal. 708 [7 P.2d 1020]. The language there used is appropriate here:

"If but slight use can be made of land claimed adversely, then the requirements of continuous and uninterrupted occupancy are satisfied, if such slight use as can be made is made thereof. This is the plain meaning of the clause 'for the ordinary use of the occupant,' it means a use appropriate to the location and character of the property, each case resting upon its own peculiar facts."

A further consideration, insofar as this appellant is concerned, is that a party to a quiet title action must rely on the strength of his own title and not on any weakness in that of his adversary. No evidence was introduced or offered

which would in any way tend to indicate that this appellant was equitably entitled to any interest in this property. No attempt was made to establish that she ever had any equitable right to a beneficial interest therein, or that she had ever asserted any claim to such an interest during a period of about 25 years. She did not appear at the trial and any claim on her part first appears, so far as disclosed by the record, through her answer in this action, which was signed and verified by her attorney.

The judgment is affirmed.

Griffin, J., and Mussell, J., concurred.