**Donna Louise AIELLO, Appellant,**

v.

**Ray CLARK and Joyce Clark, Appellees.**

**No. 7468.**

Supreme Court of Alaska.

April 6, 1984.

As Modified May 8, 1984.

---

Andrew J. Kleinfeld, Fairbanks, for appellant.

Daniel T. Saluri, Fairbanks, for appellees.

Before BURKE, C.J., and RABINOW-ITZ, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

MOORE, Justice.

Donna Aiello, individually and as co-conservator of the estate of Fern Palfy, appeals the judgment of the superior court refusing to set aside an Assignment of Beneficial Interest or, in the alternative, award damages. Palfy purported to act for herself and as attorney in fact for Aiello in assigning a note which they held as joint tenants. Aiello alleges that the assignment was beyond Palfy's general power of attorney and in violation of the Palfy Family Trust. We agree and reverse the judgment of the superior court.

### I. *Factual Background*

Raymond Clark and Donna Aiello are the son and daughter of Fern Palfy. Donna Aiello (Aiello) signed a "General Power of Attorney" on September 9, 1968 and another one on April 16, 1974 making Fern Palfy her attorney in fact at all material times. During the mid-1970s Palfy conveyed a great deal of property to Aiello; however, through her power of attorney, she retained use of the property and proceeds from sales of property. On March 24, 1976 Palfy sold a piece of real estate known as the brewery property to Daniel and Josephine Gaudiane. The subject promissory note (Gaudiane note) and deed of trust were executed giving Palfy and Aiello undivided half interests with the right of survivorship in the lien on the brewery property. Aiello had no direct input concerning the terms, conditions or decisions to sell in the property transactions of which she was a beneficiary. However, she was one of the payees on the Gaudiane note and a named beneficiary under the deed of trust. She was also very active in the efforts to collect the outstanding debt.

On October 20, 1976 Palfy created a trust to hold the Gaudiane note and other property. Palfy was Trustor of "The Palfy Family Trust." Palfy and Aiello were named as Co-Trustees. Fern Palfy was to be the trust beneficiary during her life. Upon her death, Donna Aiello, as trustee, was to distribute Palfy's residence to Ray Clark and his daughter Joyce and the remainder of the Trust property to herself. The property placed in the Trust, to the extent it still exists, is administered pursuant to the Trust Agreement.

On April 21, 1979, Palfy, purporting to act individually and as attorney in fact for Aiello, signed an Assignment of Beneficial Interest. The assignment attempted to transfer the Gaudiane note from Palfy and Aiello to Ray and Joyce Clark. Daniel Gaudiane and Attorney Eugene Belland jointly prepared the documents. Palfy signed the instrument in the presence of Gaudiane and his notary friend, John Rowlett.

Under the assignment, Palfy retained a life estate and the Clarks took the remainder interest. Aiello was completely divested of her interest. According to the instrument, the assignment was "in consideration of love and affection, and other good and valuable considerations, in hand paid ..."

Clark testified that Palfy told him she was "going to do it for what she owed me,

money she owed...." However, Clark regarded the promissory notes representing the money owed as outstanding, and therefore, he did not release Palfy from the obligations in consideration of the interest in the Gaudiane note. Furthermore, Clark testified he did not learn of the assignment until April 30, 1979 and testified he did not pay anything for it at that or any other time.

Aiello revoked the powers of attorney in August 1979 when she learned Palfy had granted Gaudiane a two-year extension on the note, which was at that time $12,000 in arrears.[1]

Aiello testified she did not learn of the assignment to the Clarks until October 1981. On May 8, 1979, just a week after he first learned of the assignment, Clark testified that he told Aiello about the assignment. She testified that he did not explain the transaction to her. Neither Clark nor Palfy (nor anyone else) ever sent Aiello a copy of the assignment or any written notice of the termination of her interest.[2] On April 13, 1982, six months after learning of the assignment, Aiello filed suit individually and as co-conservator of the estate of Fern Palfy, against the Clarks.[3]

## II. *Powers of Attorney*

Aiello argues that Palfy, under the provisions of the powers of attorney acted outside the scope of her authority when she made a gift of Aiello's half interest in the Gaudiane note to the Clarks without her knowledge or consent. The Clarks argue that the powers of attorney were held by Palfy to protect her equitable interest in the property and, as such, a gift was authorized. They further argue that Aiello had no more than bare legal title, and thus no agency relationship was ever created.

■ The powers of attorney granted by Aiello in 1968 and 1974 were general. These were not granted in consideration of being named as payee on the Gaudiane note in 1976. The instruments creating the relationship must be taken as prima facie evidence of its nature. "The intention of the donor or grantor is to be gathered from the instrument of creation." *Brown v. Laird,* 291 P. 352, 353 (Or.1930) citing 49 C.J. §§ 34, 40. *See also* 72 C.J.S. Powers § 22 (1951). Beyond this, the burden is on the contestant to show that a different type of association or purpose exists. This burden was not met. Thus, Aiello's intention must be gleaned from the written grant of power as a reasonable person reading the instrument would interpret it. In 1968, Aiello granted Palfy power to:

> lease, ... bargain, sell ... lands ... upon such terms ... as she shall think fit. Also to bargain and agree for, buy, sell, mortgage, hypothecate, and in any and every way and manner deal in and with ... other property ... and to make, do and transact all and every kind of business of what nature and kind soever.

■ Expressions such as "and otherwise dispose of" are catchall phrases and add nothing for they refer "to such undescribed methods of disposition as may have been omitted (but were not) and are in nature like those specifically enumerated." *Fujino v. Clark,* 71 F.Supp. 1, 4 (D. Hawaii

1. Unaware of the assignment which purported to divest her of any interest, Aiello traveled to Fairbanks in the summer of 1979 to begin foreclosure proceedings against the Gaudiane note. She learned at this time that in April, Palfy, individually and as Aiello's attorney in fact, had executed a modification of Deed of Trust and Promissory Note moving the due date for the $12,000 installment from March 1978 (over a year past due) to March 1981 (two years hence).

2. In fact, Aiello received a document prepared by the Clarks' attorney dated July 16, 1981 titled Declaration of Default which she was requested to sign as beneficiary and as co-conservator for

Fern Palfy, beneficiary under the Gaudiane note.

3. Mrs. Palfy was declared incompetent and Ray Clark and Donna Aiello were named as co-conservators based upon a hearing and a petition filed with the superior court dated June 24, 1980. According to trial testimony, Palfy, age 75, suffered a gradual deterioration of her physical and mental health between the mid-1970s and 1980. She was described as tired, forgetful, confused, and in need of full custodial care. She was diagnosed as suffering from Alzheimer's disease.

1947). The powers of attorney held by Palfy contained phrases of the same nature (*see* above); however, these phrases do not transform the power granted to include making gifts.

The general rule of construction is stated in *Brown v. Laird*, 291 P. at 354 deferring to *Gouldy v. Metcalf*, 75 Tex. 455, 12 S.W. 830, 831 (1889):

> The language used in the grant of general power is certainly very comprehensive, but the established rule of construction limits the authority derived by the general grant of power to the acts authorized by the language employed in granting the special powers.

In *Gouldy*, the Texas Court further stated that:

> When an authority is conferred upon an agent by a formal instrument, as by a power of attorney, there are two rules of construction to be carefully attended to: (1) The meaning of general words in the instrument will be restricted by the context, and construed accordingly. (2) The authority will be construed strictly, so as to exclude the exercise of any power which is not warranted either by the actual terms used, or as a necessary means of executing the authority with effect.

12 S.W. at 831

Thus, the authority to deal "upon such terms as she shall think fit" does not alter the type of acts which are authorized.

> A general power of attorney authorizing an agent to sell and convey property, even though it authorizes him to sell for such price and on such terms as to him shall seem proper, implies a sale for the benefit of the principal, and does not authorize the agent to make a gift of the property, or to convey or transfer it without a present consideration inuring to the principal.

*Hodges v. Surratt*, 366 So.2d 768, 773–74 (Fla.Dist.Ct.App.1979) quoting *Johnson v. Fraccacreta*, 348 So.2d 570, 572 (Fla.Dist. Ct.App.1977).

The terms of the powers of attorney granted to Palfy were general though limited to business transactions. Consistent with that, Palfy had on all prior occasions received valuable consideration in Aiello's behalf for transfers she made as Aiello's attorney in fact. As the court said in *Fujino*, 71 F.Supp. at 4, "[a] gift is not a business transaction." Furthermore, 72 C.J.S. Powers § 25 (1951) states: *"Gifts.* Power to sell does not include authority to make a gift of the subject matter, or convey it without consideration, and such a transfer is void." *See also Brown v. Laird*, 291 P. 352, 354 (Or.1930).

▇▇▇▇ In the absence of express authority to make a gift, none may be made. The agent must avoid acting to the detriment of his principal "in the absence of an explicit direction." *Estate of Rolater*, 542 P.2d 219, 223 (Okla.App.1975).

Clark relies upon the case of *Clay v. Saute*, 295 P.2d 914 (Cal.App.1956) for the proposition that the agent may make a gift where the principal holds bare legal title and the agent holds equitable title. *Clay* is distinguishable from this case. In *Clay*, the agent conveyed property to his daughter in order to deprive his business associates and creditors of access to his assets. His daughter never knew about these transfers and there is no evidence that she held any beneficial interest. The agent was declared incompetent, although he was not, and was later determined to be competent.

To the contrary, in this case, Aiello was holder of a beneficial interest in the promissory note and deed of trust and was informed of most of her interests although she was not active in the transactions. Palfy's apparent purpose in placing title in Aiello's name was not to evade creditors but rather to give her daughter a beneficial interest in the property which would become hers at Palfy's death, or when Palfy could no longer exercise the power of attorney.

The power of attorney granted to Palfy merely made her an agent for Aiello. Palfy acted beyond the scope of her authority in making the gratuitous assignment to

Clark, and Aiello is not bound by Palfy's acts and representations.

■ The general rule was stated in *State v. Neal & Sons*, 489 P.2d 1016, 1019 (Alaska 1971):

> [A] person who deals with another, knowing that the other is acting as an agent, and who fails to inquire into the extent of the delegated authority, may be held to deal at his peril.

Clark knew that his mother held a power of attorney for his sister. He did not inquire into its limits. Clark did not pay for the assignment, and Aiello did not benefit from it. Clark did not justifiably rely to his detriment upon another's acts, and thus, he cannot claim estoppel on the part of Aiello. We hold that Palfy's assignment of Aiello's beneficial interest to the Clarks is void.[4]

### III. *The Trust*

The Clarks argue that Palfy's own beneficial interest in the Gaudiane note was validly assigned for the reason that no conveyance of the property into the Trust was ever made, or in the alternative, that the Trust was revocable, and in fact had been revoked by Palfy. Aiello argues that the Trust Agreement was valid and enforceable, but that Palfy's gift of her own interest was invalid for two reasons: (1) that she was mentally disabled and (2) that Gaudiane, and perhaps Clark, exercised undue influence.[5]

The Trust Agreement provided in Article I:

> Trustor has contemporaneously with the execution of this Agreement, transferred and delivered to Trustee, or stated that she would transfer and deliver to Trustee, without consideration paid or to be paid therefor, the property set forth in Exhibit "A" attached hereto and by this reference incorporated herein and

made a part hereof. Such property, together with any additions of property made to this Trust, whether by Trustor or by an other person, shall constitute and be known as the "Trust Estate" and shall be held, administered, and distributed as hereinafter provided.

Schedule A was attached to the Trust Agreement. It listed the Gaudiane $874,000 promissory note. The terms of the Trust were not contested. The testimony at trial established that the property listed for the Trust was being administered as part of the Trust.

■ A note may be assigned merely by execution of the trust document. No endorsement is necessary where there are no challenges from a holder in due course. 11 Am.Jur.2d Bills and Notes § 313 (1963). As to delivery of the note, "... if the creator of the trust by appropriate words or acts fully and completely constitutes himself trustee, no change of possession is necessary...." 89 C.J.S. Trusts § 64 (1955).

■ Even if Palfy retained possession as Trustor, a trust was completed as to her one-half interest. "Where the instrument creating the trust expressly provides that it shall be for the benefit of the grantor during his life, a retention of possession by him is not inconsistent with the trust." 89 C.J.S. Trusts § 64 (1955). Palfy created a valid trust. The language of the trust shows the necessary present intent to create a trust. Her capacity at that time is not contested.

For Palfy to transfer the interest held in trust would have required revocation of the Trust. The terms of the Trust are unambiguous. The Declaration of the Trust provided:

> gift, we need not reach and do not decide this issue.

---

**4.** It is also possible that Aiello's own interest was transferred to the Palfy Family Trust, and that a gift of this interest would also be invalid for reasons discussed in Section III, *infra,* of this opinion. Because we have already held that the powers of attorney did not authorize a

**5.** Palfy's mental disability or the exercise of undue influence over her affairs by others need not be addressed. Our decision here makes these issues moot.

This Declaration and Agreement of Trust, made and entered into this 21 day of October, 1976, by and between FERN PALFY of Fairbanks, Alaska, (hereinafter referred to as "Trustor") and FERN PALFY and DONNA LOUISE AIELLO of Redwood City, California, as Co-Trustees, (hereinafter referred to as "Trustee").

The Trust was revocable as specified in Article IV:

During the lifetime of Trustor, this Trust may be revoked in whole or in part by the Trustor. *The power of revocation shall be exercised by written notice delivered to the Trustee.* In the event of such revocation, the revoked portion thereof shall revert to Trustor and shall constitute her separate property as if this Trust had not been created.

The document provides for revocation by the Trustor (Palfy) upon written notice to the Trustee (both Palfy *and* Aiello). (emphasis added) The only writing prepared by Palfy regarding the Trust property was the Assignment of Beneficial Interest to the Clarks. This was never given to Aiello. She discovered it only through the Fairbanks Title Company while doing a title search. Her investigation was triggered by a form she was requested to sign only as Palfy's co-conservator to permit Gaudiane to transfer the brewery property. The parties were listed as Clark and Aiello as co-conservators for the estate of Palfy and the proposed transferee. The writing was not directed to the Trustee nor did it mention the Trust.

 No other method of revocation is permissible under the terms of the Trust.[6] As stated in Restatement 2d Trusts § 330 (1959):

(1) The settlor has power to revoke the trust if and to the extent that by the terms of the trust he reserved such a power.

Comment (a) to the same section explains: "The intention of the settlor which determines the terms of the trust is his intention at the time of the creation of the trust and not his subsequent intention." Moreover, Comment j of § 330 states:

*Where method of revocation specified.* If the settlor reserves a power to revoke the trust only in a particular manner ... he can revoke the trust only in that manner.... If the settlor reserves power to revoke the trust only by a notice in writing delivered to the trustee, he can revoke it only by delivering such a notice to the trustee.

 Palfy could not avoid this provision by assigning her interest in the Trust because her interest was only a life estate. The interest which she purported to assign to Clark was everything but an estate for her life.

The assignment was in violation of the Trust. Palfy's right to receive the payments on the Gaudiane note was a Trust asset. Article VII, M. of the Trust instrument provides:

"Notwithstanding anything herein contained to the contrary, no powers enumerated herein or accorded to the Trustee generally pursuant to law shall be construed to enable the Trustor, or any other person, to purchase, exchange, or otherwise deal with or dispose of all or any part of the corpus or income of the Trust for less than adequate consideration in money or money's worth ..."

Clark did not pay for the assignment and Palfy did not replace the Gaudiane note with any other property. Therefore, neither Palfy's nor Aiello's interest was properly transferred to the Clarks.

REVERSED.

---

6. Under the facts of this case, *see* fn. 3, strict compliance with the terms of the Trust is mandated absent any exceptional reasons that might justify non-adherence to the requirement that written notice of revocation be given the Trustee.