JOANOS, Judge.
Spero John Krevatas appeals from a final judgment in the amount of $77,706.56. We affirm in part and reverse in part.
Krevatas was a neighbor and close personal friend to Elizabeth Lynes Famb-rough, a childless widow. When Mrs. Fambrough became hospitalized and later entered a convalescent home, Mr. Krevatas cared for her. Mrs. Fambrough had no local relatives. On March 27, 1985, appellant obtained a power of attorney from Mrs. Fambrough’s lawyer. Mrs. Famb-rough had signed the power of attorney in 1982 when she executed her last will, but did not deliver the power of attorney to Mr. Krevatas at that time. In April 1985, approximately three weeks prior to her death, Mrs. Fambrough, while in the hospital, changed her checking account at the American National Bank to a survivorship account held jointly in the names of herself, one of her nieces, and Mr. Krevatas. Through the years, the balance in this checking account had run between $8,000.00 and $6,000.00, but it had never exceeded $6,000.00.
In Mrs. Fambrough’s last will, she devised to Mr. Krevatas, the sum of $20,-000.00, her automobile, and the right to buy her home at fair market value. The residuary beneficiaries are her husband’s nieces. .Mrs. Fambrough remained competent until her death, and made no new will or codicil after October 20, 1982.
The record reveals that Mr. Krevatas used the power of attorney to transfer large sums from Mrs. Fambrough’s other accounts that were without survivorship into the checking account in which he and Mrs. Fambrough’s niece had the right of survivorship. By April 26, 1985, the date of Mrs. Fambrough’s death, the balance in this checking account exceeded $120,-000.00. Mr. Krevatas, using the power of attorney, changed Mrs. Fambrough’s individual certificates of deposit in the amounts of $10,000.00 and $15,000.00, to joint accounts with survivorship in the names of Mrs. Fambrough, one of her nieces and himself.
During her last five weeks, Mrs. Famb-rough signed some documents expressing her wishes and making some gifts. She documented a gift of furniture to Mr. Kre-vatas, and also directed her personal representative to appoint someone to sell her personal property.
There was no evidence presented to show that Mrs. Fambrough participated in, or directed the large transfers of her funds into the checking account in which Kreva-tas had a survivorship interest, or that she participated in the creation of survivorship interests in her certificates of deposit. After a non-jury trial, the trial court concluded that the transfers of large sums into the checking account were not for the benefit of Mrs. Fambrough. Strictly construing the power of attorney, the trial court found that the power of attorney did not confer authority on Mr. Krevatas to create surviv-orship interests. Therefore, it was determined that the creation of survivorship accounts constituted a fraudulent abuse of the power of attorney. Because of this fraudulent abuse of the power of attorney, the trial court concluded that such transfers did not create a valid survivorship interest in Mr. Krevatas. Accordingly, the trial court ordered that appellee, Mr. Donald C. Wright, as personal representative of the estate of Mrs. Fambrough, was entitled to recover from Mr. Krevatas the sum of $72,917.70. plus interest and costs, for a total of $77,706.56.
On appeal, Mr. Krevatas raises the following five points for our review: (1) Whether the trial court erred by finding that Mr. Krevatas violated and abused Mrs. *437 Fambrough’s trust and confidence and violated the fiduciary duty he owed her when acting under her grant of power of attorney; (2) whether the trial court erred in ruling that, where the personal representative files an action in equity for an accounting, and relies upon the allegations of the pleadings in order to shift the burden of going forward with the evidence, the personal representative thereby did not waive the protection of the Dead Man’s Act, § 90.602 Florida Statute; (3) whether the trial court erred in limiting consideration of the operative facts in a suit for an accounting to a period of five weeks before the decedent’s death, where it appears from the evidence that the relationship between the decedent and the defendant was one of mutual trust and confidence over a period of ten years; (4) whether the trial court erred in denying the defendant’s right to one-half of the balance in the survivorship account on the date of death or, in the alternative, one-half of the amount that customarily would have been there; (5) whether the trial court erred by “strictly” construing the power of attorney so as to nullify language authorizing appellant to, among other things, reinvest decedent’s funds, either alone or jointly.
We affirm fully on all points, except point four. As to point four, we reverse only to the extent that appellant is entitled to receive one-half of the $5,586.00 that was originally in the checking account when it was converted into a survivorship account.
The witnesses for appellant did testify that Krevatas and Mrs. Fambrough maintained a warm, mother-son relationship over the years, which might lead one to believe that she would leave the money in question to him. However, there was competent substantial evidence to support the trial court’s conclusion that Mrs. Famb-rough did not intend for appellant to receive more money than was in the account at the time she changed it to a survivorship account. Especially convincing was the evidence that Mrs. Fambrough documented a gift of furniture to appellant in the last five weeks of her life. In addition, witnesses testified that she was alert until her death, and could easily have documented her wish for appellant to have the money, if she so desired.
The record supports appellee’s argument that neither Mrs. Fambrough’s will, nor the power of attorney, sets out an intent to give the money to appellant or to provide for a right of survivorship. Appellee argues that a power of attorney must be strictly construed and the instrument will be held to grant only those powers which are specified. 3 Am.Jur.2d Agency § 29 (1962); Bloom v. Weiser, 348 So.2d 651, 653 (Fla.3rd DCA 1977). We found no language in the power of attorney which expressly or impliedly indicates an intention to authorize a gift of Mrs. Fambrough’s money. Neither the text of the document nor the evidence revealing the circumstances surrounding the execution of the document, support a conclusion that Mrs. Fambrough intended appellant to use the power of attorney for his personal gain. See Johnson v. Fraccacreta, 348 So.2d 570, 572 (Fla.4th DCA 1977). Further, in exercising granted powers, the attorney is bound to act for the benefit of his principle, avoiding, where possible, that which is detrimental unless expressly authorized. Matter of Rolater’s Estate, 542 P.2d 219, 223 (Okla.App.1975); Hodges v. Surratt, 366 So.2d 768 (Fla.2d DCA 1978), cert. denied, 376 So.2d 76 (Fla.1979), appeal after remand 389 So.2d 1230 (Fla.2d DCA 1980). (emphasis supplied).
It is clear that Mrs. Fambrough consented to the conversion of the household account containing $5,586.00, into an account over which Mr. Krevatas could have some control, and would have one-half of the survivorship interest. However, it is undisputed that appellant, acting independently, selected and obtained the banking forms to alter the form of the household checking account. There was no testimony or evidence that appellant gave Mrs. Famb-rough a choice as to what kind of account she desired, or the alternatives available to her. There was no evidence that Mrs. Fambrough acted with full warning and perfect knowledge of the consequences of *438 appellant’s act in creating an account into which he could transfer large sums of her money for his personal gain. See Crane v. Stulz, 136 So.2d 238, 241 (Fla.2d DCA 1961). Further, there was no evidence that Mrs. Fambrough desired additional funds to be placed in that account. Also, the evidence revealed that when Mrs. Famb-rough signed the signature card creating the account in question, only appellant and his housemate and business partner were present. We believe the record supports the trial court’s determination that, by planning and executing the financial arrangements as he did, and then appropriating Mrs. Fambrough’s funds to his own use, which conduct denied the nieces their inheritance as residuaries of the estate, appellant violated his fiduciary duty to Mrs. Fambrough. However, the evidence reveals that Mrs. Fambrough was alert at the time she signed the card converting the household account containing $5,586.00, into an account in which Mr. Krevatas had right of survivorship. Therefore, Mrs. Fambrough must have been aware that Mr. Krevatas would receive one-half of the sum in that account upon her death, although, based upon the evidence, the trial court could conclude that Mrs. Fambrough had no interest in increasing the amount in the account.
With respect to the remainder of the funds at issue, we find that appellant’s emphasis on the fact that “no undue influence was proven” is misplaced, and that In Re Estate of Paulk, 503 So.2d 368 (Fla.lst DCA 1987), rev. denied 513 So.2d 1062 (Fla.1987), cited as support, is inapposite. Because there is no evidence before this court to indicate that Mrs. Fambrough was even aware that Mr. Krevatas was making large cash transfers into the account in which he had survivorship rights, we find appellant’s assertion that he did not exercise undue influence upon Mrs. Fambrough to coerce her approval of such transfers is of no consequence here. The complaint filed by decedent’s personal representative charges appellant with violating her trust, abusing her confidence and wrongfully appropriating and converting decedent’s funds to his own use. We agree with appellee’s argument that the final judgment is consistent with the pleadings and the proof. Further, there is competent substantial evidence to support the trial court’s conclusion as stated in the order that appellant’s manipulations of the money were not for the benefit of Mrs. Famb-rough, but were solely for the benefit of Mr. Krevatas.
We also agree with appellee, that in Florida, a personal representative may bring an action and still retain the ability to raise the Dead Man’s statute as to offered evidence. See Seeba v. Bowden, 86 So.2d 432, 434 (Fla.1956), an action in ejectment by administrators of a decedent’s estate, where the Florida Supreme Court held that the moving party could invoke the Dead Man’s statute to exclude testimony of defendant concerning statements by decedent. 86 So.2d at 434. See also Briscoe v. Florida National Bank of Miami, 394 So.2d 492 (Fla.3rd DCA 1981), a case involving a suit brought by decedent’s co-personal representatives, where the Third District found that the administrators had waived the application of the Dead Man's statute to defendant, implying that they could have invoked the Dead Man’s statute had they not stipulated to the admission of certain written evidence. Further, we did not find support for Mr. Krevatas’ argument (and none was supplied), that by relying on portions of the complaint and Mr. Kreva-tas’ answer, the personal representative waived the Dead Man’s statute as to oral communications between Mr. Krevatas and Mrs. Fambrough. We found that the complaint did not specifically refer to any such oral communications.
We find merit in appellee’s argument that, if admissions and statements referring to communications with the decedent in the pleadings did waive the Dead Man’s rule, the rule would be rendered totally ineffective, since it would mean that any defendant, in uncorroborated testimony, could testify to fabricated self-serving communications with the decedent. Obviously, it was exactly this type of self-serving testimony that the Dead Man’s statute was designed to prevent. See Estate of Parson, 416 So.2d 513 (Fla.4th DCA 1982), pet. *439 for rev. denied, 426 So.2d 27 (Fla.1983). We find that the trial court did not err by excluding Mr. Krevatas’s oral testimony as to communications between Mrs. Famb-rough and himself.
In issue three, appellant speculates that the trial court, in ruling against him, may have overlooked the ten years of a close relationship that existed between appellant and Mrs. Fambrough. We find this argument to be without merit. The record reveals that the trial judge not only adknow-ledged appellant’s continual care of Mrs. Fambrough, but commended Mr. Krevatas for his years of such kind attention. Further, as appellant contends, appellant’s financial involvement with Mrs. Famb-rough, which gave rise to this suit, occurred in the last five weeks of her life. Appellant has not shown that the trial court erred by describing these financial transactions as the “operative facts.”
We affirm the trial court’s order which requires appellant to return the funds and interest in question to the estate, with the exception that he may keep, as Mrs. Famb-rough intended, one-half of the $5,586.00 that was originally in her checking account when she signed the card granting appellant a right of survivorship in that checking account. Therefore, we affirm in part and reverse in part, and remand this cause for proceedings consistent with this opinion.
SMITH, C.J., and WENTWORTH, J., concur.