573 So.2d 57 (1990)
In re the ESTATE OF Katherine V. BELL, Also Known As Virginia Bell, Deceased.
William HUNTER, Daniel Hunter and Marywil Hunter Croson, Appellants,
v.
Oleta JOHNSON, Personal Representative of the Estate of Katherine V. Bell, Also Known As Virginia Bell, Appellee.
No. 90-1318.
District Court of Appeal of Florida, First District.
December 26, 1990.
Thomas W. Brown and Donna Houghton Thames of Brannon, Brown, Haley, Robinson & Cole, P.A., Lake City, for appellants.
*58 David D. Eastman of Parker, Skelding, Labasky & Corry, Tallahassee, for appellee.
NIMMONS, Judge.
Appellants, beneficiaries of decedent Katherine V. Bell's will, appeal a final order denying their motion to compel production of estate assets or remove the personal representative, and finding two certificates of deposit are not estate assets. We reverse in part and affirm in part.
On January 7, 1985, Katherine V. Bell, also known as Virginia Bell, executed her last will and testament. In the will she bequeathed all funds remaining in her estate, after debts had been paid, to Oleta Johnson (a first cousin), Marywil Hunter Croson (a niece), William Miles Hunter, Jr. (a nephew), and Daniel Thomas Hunter (a nephew), to be divided equally among them. Bell also bequeathed her home, the land upon which it was situated, and all household furniture and fixtures to Oleta Johnson, and named Johnson personal representative. At the same time the will was drawn, Bell executed a power of attorney naming Oleta Johnson as attorney-in-fact. Both of these documents were executed approximately three weeks after Bell entered a nursing home where she remained until her death on February 21, 1989. There was no dispute that Ms. Bell was alert and mentally competent until a few weeks before she passed away.
On April 12, 1985, Johnson, using the power of attorney, purchased with $37,000 of Bell's funds a certificate of deposit in that sum at the First Federal Savings and Loan Association of Live Oak. That CD was set up with Bell's name as "trustee" and Oleta Johnson as "beneficiary." On July 12, 1985, in a similar fashion, Johnson purchased with $40,000 of Bell's funds another Certificate of Deposit at the Hamilton County Bank, n/k/a Barnett Bank. That CD was set up in the names of "Katherine V. Bell or Oleta Johnson."
Following Bell's death, Johnson filed a petition for administration and was appointed as personal representative. In an inventory filed by Johnson, the two CD's were referred to with the statement that, notwithstanding the names of the owners of the CDs as reflected on the certificates themselves, Johnson intended "that all of the principal and accrued interest of [the certificates] shall be a part of the estate assets."
The appellants objected to the appellee's accounting of funds and monies received or disbursed from the estate, so the trial court required a full and complete accounting of all the estate funds from the time Johnson became cosigner on any of the decedent's accounts or from January 1, 1985, whichever was first.
A special report prepared by a certified public accountant was submitted, but the appellants remained unsatisfied and filed another motion to compel the personal representative to make a full and complete accounting of the decedent's funds, including receipts from interest on the certificates of deposit, income tax refunds, and rental income. At the hearing on the motion, Johnson testified that she and Bell, her cousin, enjoyed a close relationship for over twenty years and when Bell was ill, Johnson willingly took care of her and visited her in the nursing home at least three times a week. Johnson testified Bell gave her the interest checks on the certificates of deposit after reviewing them and Johnson, with her power of attorney, would sign Bell's name to them. Johnson also testified the tenants renting Bell's home simply made the rental checks out to Johnson per Bell's wishes. Johnson indicated none of the other beneficiaries were close to Bell and had visited only a few times in the previous forty years.
The trial judge denied the appellants' motion to compel and the appellants filed another motion to compel production of the assets or, in the alternative, to remove the personal representative. Johnson filed a motion to withdraw the certificates of deposit from the estate's assets. In the trial court's order, the appellants' motion was denied and the certificates of deposit, the decedent's house, and all rental income associated with it were found to be the personal property of Johnson.
*59 The appellants raise three issues on appeal: (1) whether the trial court erred in finding the two certificates of deposit were not estate assets; (2) whether the trial court erred in denying the appellants' motion to compel a full and complete accounting; and (3) whether the trial court erred in not removing the personal representative based on a conflict of interest.
According to Johnson v. Fraccacreta, 348 So.2d 570 (Fla. 4th DCA 1977), a general power of attorney does not give the agent authority to make a gift of the principal's property. A conveyance that exceeds the scope of the power of attorney is void. In Fraccacreta, the decedent owned real property and, several months before her death, executed a power of attorney appointing her daughter as attorney-in-fact. The daughter used her power of attorney to execute a warranty deed conveying the decedent's property to the decedent and her husband as tenants by the entireties. The administrator ad litem brought the action contending the power of attorney did not authorize the attorney-in-fact/agent to make a gift. The court agreed and held that in construing an instrument creating a power of attorney, the court must look to the language of the instrument and that an agent has no power to make a gift of the principal's property unless that power is expressly conferred by the instrument or unless such power arises as a necessary implication from the powers which are expressly conferred.
The power of attorney executed by Ms. Bell in the case at bar is devoid of any language purporting to authorize Johnson to use Ms. Bell's funds to purchase certificates of deposit in such a way as to create an individual pecuniary interest in Johnson. Furthermore, there were no witnesses to any oral agreement that may have existed between Bell and Johnson. Johnson is precluded, pursuant to the Dead Man's Statute,[1] from testifying as to any statements Bell may have made evidencing her intent to authorize Johnson to appropriate Bell's property for Johnson's own use and benefit.
Under Hodges v. Surratt, 366 So.2d 768 (Fla. 2d DCA 1978), the court held the attorney-in-fact for the decedent violated her fiduciary duty by transferring the principal's property to her husband and appropriating funds in the checking account for her own use absent clear language in the power of attorney authorizing such actions.
Hodges was cited with approval in Krevatas v. Wright, 518 So.2d 435 (Fla. 1st DCA 1988). Krevatas was a close friend and neighbor of Mrs. Fambrough, a childless widow with no local relatives. Mrs. Fambrough executed a power of attorney designating Krevatas attorney-in-fact and delivered it to him three years later. Approximately three weeks before she died, Fambrough changed her checking account, the balance of which never exceeded $6,000, to a survivorship account, adding Krevatas' name. She also, via her will, left $20,000 and her car to Krevatas, and during her last few weeks, signed documents making gifts to Krevatas and others. Krevatas used the power of attorney to transfer $100,000 into the survivorship account from her other accounts and altered existing CD's totalling $25,000 so that he and one of Mrs. Fambrough's nieces would have survivorship rights.
The court noted an absence of evidence indicating Mrs. Fambrough participated in the transfer of money into her checking account or the creation of survivorship interests in her certificates of deposit. Additionally, the court found Mrs. Fambrough did not intend to give Krevatas more money than was in the checking account at the time she changed it to a survivorship account. This apparent lack of intent was based on the fact that Mrs. Fambrough documented a gift to Krevatas in the last few weeks of her life while she was still alert when she easily could have documented her desire for him to have the money. The court found that neither the power of attorney itself nor the circumstances surrounding the execution of the document demonstrated an express or implied authority for Krevatas to use the power for his personal benefit.
*60 In the case at bar, the facts indicate that the will and the power of attorney were executed approximately three weeks after Ms. Bell entered a nursing home where she remained alert for several years prior to her death in 1989. She had ample opportunity to document in writing her wishes regarding the disposition of her estate assets. However, the language of the power of attorney does not expressly authorize Johnson to make a gift of Bell's assets for her own personal benefit, nor does the will evidence Bell's intent for Johnson to have the funds. Further, there is no evidence of implied authorization from the circumstances surrounding the execution of the documents. Therefore, we reverse the trial court's finding that the two certificates of deposit were not estate assets.[2]
In reversing the first issue, we must also reverse the third issue. According to Section 733.504(9), Florida Statutes, a personal representative may be removed for holding or acquiring conflicting or adverse interests against the estate which will adversely interfere with the administration of the estate as a whole. In holding that the certificates of deposit are to be considered estate assets, a conflict between the personal representative and the estate is created, requiring Johnson's removal as personal representative.
We affirm as to the second issue, since the trial court did not err in failing to compel a full and complete accounting. It is obvious from the record that the appellee testified as to the whereabouts of the funds the appellants claim are unaccounted for. The trial court did not err in refusing to order another accounting.
Accordingly, we reverse in part and affirm in part and remand for further proceedings consistent with this opinion.
SMITH and ZEHMER, JJ., concur.
NOTES
[1] Section 90.602, Florida Statutes.
[2] The trial court's order relied in part upon Section 658.56, Florida Statutes. However, that section has no application to the case at bar because Bell had nothing to do with the purchase of the two CD's.