[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
This is a suit by an estate. Prior to his death the deceased executed a statutory, short form general power of attorney in favor of his nephew, the defendant in this case. Acting under the color of his authority as an attorney-in-fact pursuant to the statutory short form power of attorney the defendant gave away various assets including a half interest in commercial property, the ownership of an undeveloped lot and cash from checking and CT Page 11579 savings account.
In portions of a deposition attached to his memorandum the defendant says his uncle told him "that he wanted me to manage his account", he further said "Do whatever you think — do what you feel fit. He reminded me that he owed me $6500." The uncle told the nephew there was a C.D. which he wanted him to cash and that he should make up the difference through subsequent withdrawals, apparently referring to the money owed on the loan. The nephew went on to say that the uncle described the nephew's sister as a "loyal" and "dedicated" niece and that "he wanted me to take care of her in terms of . . . what I thought would be appropriate money to give her." He gave her $500 during a period of time that is not defined in the deposition.
The motion for summary judgment claims no facts are in dispute since the defendant's answer acknowledges he gave the gifts in question.
The motion for summary judgment raises what are really intertwined legal questions.
 1.) Does an attorney-in-fact in Connecticut, operating as a fiduciary pursuant to a Short Form Power of Attorney have authority to make gifts on behalf of the principal if he or she is not specifically authorized to do so in the Power of Attorney document?
 2.) If there is no such specific authorization does such a person have the power to make gifts if he is orally authorized or directed to make certain gifts.
The power of attorney was executed here pursuant to general Statutes § 1-42 et. seq., our Statutory Short Form Power of Attorney Act. Both sides here seem to assume that the power of attorney instrument that was signed by the deceased uncle gave the attorney-in-fact the powers he would have had under the relevant statutes.
As to real estate Section 1-44 governs, there is no explicit reference to the power of the attorney-in-fact to CT Page 11580 make a gift but the following language that may be relevant to this issue does appear:
 "Sec. 1-44. Real Estate Transactions. In a statutory short form power of attorney, the language conferring general authority with respect to real estate transactions shall be construed to mean that the principle authorizes the agent: . . . (2) to sell, to exchange, to convey either with or without covenants, to quit claim, to release, to surrender, to mortgage, to encumber, to partition or to consent to the partitioning, to revoke, create or modify a trust, to grant options concerning, to lease or sublet, or otherwise to dispose of, any estate or interest in land . . . . and (12) in general, and in addition to all the specific acts in this section enumerated, to do any other act or acts, which the principal can do through an agent, with respect to any estate or interest in land.
Section 1-45 sets out the powers of the attorney-in-fact as regards chattels and goods; he or she has the authority
 "(2) to sell, to exchange, to convey either with or without covenants to release, to surrender, to mortgage, to encumber, to pledge, to hypothecate, to pawn, to revoke, to create or modify a trust, t o grant options concerning, to lease or sublet to others, or otherwise to dispose of any chattel or goods or any interest in any chattel or goods . . . and (10) in general, and in addition to all the specific acts in this section enumerated, to do any other act or acts which the principal can do through an agent with respect to any chattel or goods or interest in any chattel or goods."
It is fair to say that all the other powers relative to real estate or chattels listed in these two acts concern very specific powers which cannot be construed as a general power to give away or dispose of the principal's property or make a gift of it to anyone.
If one were to read Section (2) of each one of these CT Page 11581 statutes literally there does not seem to be much doubt that in fact the defendant, the agent in the power of attorney agreement could make a gratuitous transfer of his uncle's property, real or personal.
Although the parties did not specifically address this issue I am assuming from their briefs and from reading the documents in the file of a companion case that both sides agree that any instrument creating the power of attorney relationship here gave the defendant no more or less powers than that set forth in the statutes. I further assume from the companion case that the actual instrument mirrored the recommended form set out in Section 1-43 which in relevant part says:
 . . ."The powers granted by this document are broad and sweeping. They are defined in Connecticut Statutory Short Form Power of Attorney Act, Sections 1-42 to 1-56, inclusive."
The authority of the agent in a power of attorney agreement depend on an interpretation of the agreement and ordinary principles of contract interpretation are said to apply, Long v. Schull, 184 Conn. 252, 257 (1981). A power of attorney, however, is a formal instrument delineating the extent of authority and seeing as here the parties utilized specific statutory grants of power and a statutory form it can be said that instruments such as these having been carefully drawn "the terms used are given a technical rather than a popular meaning, and it is assumed that the document represents the entire understanding of the parties.", Restatement (Second) Agency, Section 34, comment h, page 122.
How are the powers conferred here to be interpreted in light of the statutory language of Sections 1-44 and 1-45.
It has been said that
 "nearly every jurisdiction that has considered this issue . . . has concluded that a general power of attorney authorizing an agent to sell and convey property although it authorizes him (sic) to sell for such price and on such terms as to him (sic) shall seem proper, implies a sale for the principal's CT Page 11582 benefit. Such a power of attorney, however, does not authorize the agent to make a gift of the property, or to convey or transfer it without a present consideration inuring to the principal", King v. Bankerd, 492 A.2d 608, 612 (Md., 1985), well over a score of cases are then cited, also see generally 3 Am.Jur.2d, "Agency", Sec. 31, pp. 535-536, 73 ALR 884. "Power of Attorney as authorizing gift or conveyance or transfer without a present consideration". Also see case referred to as leading case by many decisions, Brown v. Laiard et al, 291 P. 352 (Ore., 1930).
The reasons for the rule are laid out in the King case at page 613(1) the power to make a gift of the principal's property is potentially hazardous to the principal's interest (2) the main duty of an agent is loyalty to the principal (3) it would be unusual for an owner of property to authorize another to give his or her property away; why wouldn't he or she do it on their own. Some courts go so far as to suggest that attorney's-in-fact be regarded as fiduciaries and thus any self-dealing involving such an agent or transfer of the principal's property without consideration would be presumptively invalid, see Estate ofCasey v. C.I.R., 948 F.2d 895, 899, (CA. 4, 1991).
The question becomes then does the specific statutory language in Section 1-44 and 1-45 refer merely to the attorney-in-fact's power to sell or transfer property for consideration or does it authorize the making of a gift. A good discussion of this problem is had in the case ofAiello v. Clark, 680 P.2d 1162, 1175-1166 (Alaska, 1984). There it is noted that "expression such as `and otherwise dispose of' are catchall phrases and add nothing." They refer "to such undescribed methods of disposition as may have been omitted (but were not) and are in nature like those specifically enumerated." Fujino v. Clark,71 F. Sup. 1, 4 (D. Hawaii, 1947). The language in both the subsections (2) talk generally in terms of the power to convey real or personal property for a price and the "otherwise dispose" of language shouldn't be interpreted as a power to convey the property by gift given the strong policy reasons noted above which argue for explicit language authorizing gift making power for the attorney-in-fact.
Similarly the broad language in Section 1-43 saying CT Page 11583 that the attorney-in-fact has the same powers to act as the principal is circumscribed by the fact that the attorney-in-fact is referred to throughout as an agent as is the case with subsection (12) of Section 1-44 and subsection (10) of Section 1-45. The basic point established by Kingv. Bankerd, supra is that an agent is presumed to act on behalf of the principal or for his or her benefit and in giving away the principal's property he or she is not apparently doing so. Therefore it makes sense that we have a rule that if such gift giving is to be validated the instrument creating the power of attorney relationship should specifically and explicitly authorizing of gifts. Some other cases following the principles set forth in King
in addition to the cases already discussed are: Johnson v.Fraccareta, 348 So.2d 570 (Fla., 1977), Hodges v. Surratt,366 So.2d 768 (IFla. [Fla.], 1978), Estate of Rolater,542 P.2d 219 (Okla., 1975), In Re Estate of Bell, 573 So.2d 57
(Fla., 1990), Fender v. Fender, 329 S.E.2d 430 (S.C., 1985),Verjaska v. Pumphrey, 488 N.W.2d 514 (Neb., 1992).
Relying on the policy reasons previously set forth and the principles of contract construction dictated by those considerations I cannot find that the power of attorney instrument as set forth in Section 1-43 and the powers given to attorneys-in-fact by Section 1-44 or 1-45
authorized the defendant to make gifts of his principal's property. But that does not end the discussion.
The courts seem to be divided on the question of whether they will accept evidence of oral authorization by the principal to the attorney-in-fact to make gifts of the principal's property even though the actual instrument creating the power of attorney doesn't explicitly give the attorney-in-fact power to do so.
The defendant at his deposition testified his uncle, now deceased, granted him that power to make gifts to the defendant's sister — the transfer of certain property to her by the defendant is one of the matters that are in contention. Such communications from the deceased uncle would probably be admissible under our very liberal Dead Man Statute Sec. 52-145 C.G.S.A. and might qualify as non-hearsay verbal acts. In any event the factual claims made by the defendant to avoid summary judgment are properly before the court. CT Page 11584
One case stands unequivocally for the proposition that an oral authorization will not permit an attorney-in-fact to make a gift of the principal's property, that case isFender v. Fender, 329 S.E.2d 430 (S.C., 1985). The rule and the reasoning behind it are succinctly stated by the court:
 "Absent intention to the contrary, an agent must further the principal's interests. He (sic) may not use his (sic) authority in a manner hostile to the principal for the benefit of himself (sic) of a third party. . . It is incumbent upon the agent to act with the utmost good faith and loyalty. Effectively, absent express intention, an agent may not utilize his (sic) position for his (sic) or a third party's personal benefit in a substantially gratuitous transfer.
 Appellant seeks to remove himself (sic) from the operation of the general rule. He contends that Mr. Fender orally authorized the transfers. Notwithstanding such a claim, we hold today that any purported oral authorization was ineffective. The power to make any gift must be expressly granted in the instrument itself."
Id at page 431.
The court said it adopted the rule "to avoid fraud and abuse", id page 431. The cases of Johnson v. Fraccareta,348 So.2d 570, 572 (Fla., 1977) and Aiello v. Clark,680 P.2d 1162, 1165-1167 (Alas., 1984) appear to follow the rule in Fender but language to that effect in those cases would be dicta since it does not appear in those cases that the defendant claimed he or she had oral authorization apart from the power of attorney instrument to make gifts of the principal's property.
But the position set forth in Fender doesn't appear to be universally accepted. Even cases which accept the so-called general rule that the authority to make gifts must be explicitly set out in the instrument will at the same time consider other evidentiary and factual circumstances apart from the language of the instrument in deciding whether the attorney-in-fact was authorized to make a gift. CT Page 11585 See for example Vejraska v. Pumphrey, 488 N.W.2d 514 (Neb., 1992) where the court after referring to the instrument and specifically citing Fender concludes by saying:
 "There was no power to make gifts in the power of attorney document, nor was there sufficient evidence before us to show that Vogltanz had the clear intent to make a gift to the defendant."
Id at p. 518.
The court affirmed the trial court's finding that there was no authority to make gifts and upheld the trial court's weighing of the testimony of witnesses including that of the principal in so far as the trial court concluded that there was no intention to authorize the giving of gifts. The thrust of the opinions in the following cases also appear to hold that although the language of the instrument is crucial other evidence will be considered to decide the question of the scope of authorization; Hodges v. Surratt, 366 So.2d 768, 769-773
(factual analysis engaged in by court), also see p. 774 where court said "under the circumstances of this case transfers by way of gift violated fiduciary obligations in absence of clear language in power of attorney instrument. Also see especially, In re Estate of Bill, 573 So.2d 57,59 (Fla., 1990), King v. Bankerd supra at 492 A.2d p. 612-613, also see Estate v. Rolater, 542 P.2d 219 (Okla., 1975) and factual analysis court engages in at pages 221 through 223, also cf Huntsman v. Huntsman, 192 P. 368, 373 (Vt., 1920) commenting and distinguishing the earlier case ofWade v. Northrup, 140 P. 451 (Or., 1914).
Frankly I believe Fender goes too far in saying the actual instrument is the only source of authorization in this type of case. Its reasoning is based on fear of fraud and I believe a false analogy to and reliance on formal agency theory. Such theory clearly says the agent must act on behalf of the principal, the principal can't be expected to authorize gifts of his or her property to avoid fraud, when such gifts are made they can only be upheld if the instrument defining the power of attorney and this agency relationship explicitly authorizes it. CT Page 11586
The assumptions such theorizing relies on is that of an agency relationship in a commercial or business setting. Of course in such a setting since profit is the goal it would be highly unusual for the agent to claim that there is authorization to give away the principal's property. How can the agent be said to act on behalf of the principal if the agent engages in such action? In the commercial or business context the Fender rule makes much sense as applied to power of attorney relationships.
But in the familial power of attorney setting the rule if woodenly applied can in some cases lead to unfair results. In other words in such a setting I do not believe it so unusual that a relative unable to manage his or her own affairs might want to appoint another relative or close advisor to distribute property by way of gifts to other relatives or friends. It is true that in such a setting there is a danger of self-dealing and of unfairly harming the interests of other family members who may not be included in the attorney-in-fact's largesse. But I think the best way to handle the competing interests in this type of familial power of attorney situation would be to say that if the actual written instrument doesn't give the explicit power to make gifts there is a prima facie presumption that the gift is unauthorized. The burden of proof or persuasion would then shift to the side trying to categorize the transaction as a gift which was either authorized orally or by a course of conduct. That party would have to establish by a preponderance of evidence or perhaps by a higher standard of clear and convincing evidence that the gift was so authorized.
With modern discovery procedures of interrogatories and depositions there is a good chance that self-dealing can be ferreted out without the need to forestall the necessity of the inquiry by establishing iron bound, either — or rules such as established in Fender.
Therefore the court believes the motion for summary judgment should be denied since factual issues have been raised by the defendant relative to whether he had authorization to dispose of Mr. Antone's property in the manner alleged on the complaint.
Corradino, J. CT Page 11587